## FRANKLIN LIFE INS. CO. v. PARISH.
### No. 9189.

Circuit Court of Appeals, Fifth Circuit.
Jan. 25, 1940.

John H. Carter and John H. Carter, Jr., both of Marianna, Fla., for appellant.

James H. Finch, of Marianna, Fla., and C. L. Waller, B. A. Meginniss, and Ben C. Willis, all of Tallahassee, Fla., for appellee.

Before SIBLEY, HUTCHESON, and HOLMES, Circuit Judges.

SIBLEY, Circuit Judge.

In an equitable suit touching a life insurance policy of $25,000 on the life of her deceased husband, Mrs. Wilkie Parish obtained a decree that the policy was effectively reinstated as of Feb. 28, 1934, and of force on March 5, 1934, when the insured died. The insurer, Franklin Life Insurance Company, appeals.

The facts are simple and uncontested. The policy was issued May 29, 1929, at age thirty-five for an annual premium of $523. There were three lapses for non-payment of premiums with prompt reinstatements without medical examination. For non-payment of the premium due May 29, 1933, the policy again lapsed.

It contained a provision reading thus: "Reinstatement: This policy may be reinstated (unless previously surrendered) at any time after default in the payment of any premium after the first, provided application therefor is made and satisfactory evidence is furnished the Company of the insurability of the insured and payment is made of all past due premiums with interest thereon at the rate of five percent per annum from the date when due. * * *" In December, 1933, an agent of the Company solicited the insured to reinstate or restore his insurance on a plan the agent had worked out, but insured could not then make financial arrangements. On February 24, 1934, the insured gave a check for $50.50 post-dated March 1, and a note for $108 due April 28, 1934, and signed a form headed "Application for Restoration of Policy", which recited that the policy, identified by its number, had lapsed and was desired to be "restored", and asked twelve questions which were answered. It concluded: "It is agreed that said policy shall not be restored until this application shall be approved by an officer at the Home Office of the Company. * * * I hereby authorize any physician to disclose any information heretofore or hereafter acquired while attending me in a professional capacity." This application was accompanied with a medical examination report made by a local physician who habitually examined for the Company, which disclosed no unfavorable symptoms or conditions. The check, note, application and medical examination reached the Home Office on Feb. 28, 1934, and an order was at once given for a further "inspection report" to be secured, which is a confidential enquiry into the assured's history and health, and was usually required in accepting risks of this size. The check was not cashed. While awaiting this report and before any action was taken on the application, the insured on March 5 suddenly collapsed and died while using a hand saw. There was no evidence, save a piece of hearsay objected to and not admissible, as to what he died of. The Company returned the note and check and denied any liability.

Mrs. Parish contends that there was a right of reinstatement under the policy, which had not been surrendered; that a premium settlement satisfactory to the agent who had authority to receive and act on premiums was made; and evidence of insurability furnished which ought to have been satisfactory and was found by the judge to be satisfactory; so that without any further action by the Company reinstatement occurred when the papers were received and retained by it. The Company asserts that the agent had no authority to do anything but transmit the papers as he did; that the proposal was submitted with the express agreement that it should not take effect until approved at the home office, and it never was approved. To the last point it is replied that no additional requirement could be added to the policy provision, and there was no consideration for such agreement.

Both sides cite the case of Lanier v. New York Life Ins. Co., 5 Cir., 88 F.2d 196, 199, which involved a policy provision for reinstatement. We adhere to what was there said as to the nature of such a reinstatement, that it is not so much a new contract as a performance of the old one, and "results in putting the old contract back into force with its premium rates and premium dates and its general provisions unchanged. Pursuant to a conditional promise in the policy to do so, it wipes out the default in premiums as though it had not occurred." We say again that the "reinstatement when the conditions are met is a positive right and may be specifically enforced;" but "the reservation that an insurance company shall be satisfied with the evidence of insurability fairly implies that it shall have the evidence put before an agent authorized to consider it and with

opportunity to weigh it." In the present case the evidence is positive and uncontradicted that neither the agent nor the medical examiner had any such authority. When it reached the home office it was taken under consideration without delay, and further investigation thought necessary was undertaken that very day. The insured's sudden death from some internal weakness, while it does not control the case, serves to emphasize the fact that routine medical examinations may often fail to disclose serious conditions which further tests might discover. An insurer ought not to be cut off from making a reasonable enquiry which it is promptly pursuing to see if insurability really exists. The consent at the end of the application for physicians to tell what they might know shows that further enquiry was contemplated. If this were a reinstatement under the policy, and if the express agreement that home office approval should be necessary were without consideration, we should hold no reinstatement had been accomplished.

 But the reinstatement provision in the policy was not being followed. Under it the premium of $523 which fell due May 29, 1933, would have had to be paid, with interest, amounting to $542.61, and a like premium would fall due May 29, 1934. Under the plan submitted to the Company the rate was based on the insured's then age of thirty-nine, the premium date was changed to Feb. 28, and the check and note amounting to $158.50 represented the first quarter's premium of this new year. The annual premium would be $634 and not $523. A new policy was to be issued bearing date Feb. 28, 1933. The past due premium was not to be paid at all. If this can be called a reinstatement of the old policy, it was on such a departure from the conditions fixed in it as to afford ample consideration for the agreement that it should not be effective until approved at the home office. This application makes no reference to the reinstatement provision of the policy, calls what it proposes a "restoration", and since a new policy was to be issued of a different date and with a changed premium there was really to be a new contract. The agreement that it should not have effect until approved at the home office was a binding element of the negotiations, no matter what may have been the authority of the agent who prepared and transmitted the papers. The old policy had lapsed.

The new one had never been finally agreed on. No insurance was of force.

The judgment is reversed and the decree set aside, and the cause remanded with direction to dismiss the bill.