Isaac Sylvan Prescott v. Mutual Benefit Health and Accident Association, an insurance corporation.

183 So. 311.
Opinion Filed July 19, 1938.
Rehearing Denied September 30, 1938.

*Maguire & Voorhis,* for Appellant;

*Giles & Gurney,* for Appellee.

BUFORD, J.—The appeal is from final decree as follows:

"IT IS HEREBY CONSIDERED, ORDERED AND DECREED that said policy of insurance is unambiguous; that additional provisions 'C' and 'D' contained in said policy give the defendant Insurance Company the right to accept or reject any payment of renewal premiums offered, and that in the absence of an acceptance of any renewal premium offered, said policy terminates and ceases to continue in effect past the end of the previous term for which premium was accepted by the Defendant Company; that the refusal of the Defendant Company to accept the renewal premium tendered in advance by plaintiff for the purpose of renewing said policy from April first, 1937, was authorized, and that in so refusing the Defendant Company acted within its rights under said policy, and said policy terminated and ceased to continue in effect past the end of the previous term for which premium was accepted by the Defendant Company; plaintiff allowed till April rule day to amend his Bill of Complaint, and upon failure to amend IT IS HEREBY CONSIDERED, ORDERED AND DECREED that this Decree be and the same is hereby made final."

The record shows that on November 22, 1932, Prescott,

the plaintiff, made application to Mutual Benefit Health and Accident Association, the defendant, for an insurance policy, which defendant's agent represented and stated was a non-cancellable policy and would continue in force so long as Prescott promptly paid the quarterly premiums of $12.00 each.

The initial premium of $17.00 was paid, and the policy then delivered to Prescott purported to insure him "against loss of life, limb, sight or time, resulting directly and independently of all other means from bodily injuries sustained through purely accidental means" and "against loss of time on account of disease contracted during the term of this Policy."

Such policy bore on the face thereof in heavy black type and large block capital letters, the following:

"TEN YEAR INCREASING POLICY."

And the words:

"THIS POLICY PROVIDES BENEFITS FOR LOSS OF LIFE, LIMB, SIGHT OR TIME, BY ACCIDENTAL MEANS, OR LOSS OF TIME BY SICKNESS AS HEREINAFTER PROVIDED."

The policy further provides that after the first year's premium has been paid, each year's renewal premium paid in advance on said policy shall add $250.00 to the death benefit until the same amounts to $5,000.00.

The policy further provided that when 20 full annual premiums shall have been paid, the death benefit of $5,000.00 may be continued in force thereafter at a yearly cost of $5.00 without a medical examination.

The policy did *not* contain any provision for the cancellation of the policy, "Standard Provision No. 16" relating thereto having been entirely omitted.

Among the "Additional Provisions" contained in the policy are the following:

"(c) The term of this policy begins at 12 o'clock noon Standard time, on date of delivery to and acceptance by the Insured against accident and on the thirty-first day thereafter against disease and ends at 12 o'clock noon on date any renewal is due. No reduction in the benefits of this policy shall be made during the lifetime of the Insured on account of age except in Parts D and K which shall be reduced ten per cent. when the Insured is or becomes fifty-six years of age, with further reduction of an equal amount effective with each additional attained year of age to and including sixty.

"(d) The copy of the application attached hereto is hereby made a part of this contract and this policy is issued in consideration of the statements made by the Insured in the application and the payment in advance of Seventeen ($17.00) Dollars as first payment; and the payment in advance, and *acceptance* by the Association of Premiums of Twelve ($12.00) Dollars Quarterly thereafter, beginning with April 1st, 1933, is required to keep this policy in continuous effect. The mailing of notice to the Insured at least fifteen days prior to the date they are due shall constitute legal notice of dues, and should the premium provided for herein be insufficient to meet the requirements of the Association it may call for the difference not to exceed one additional quarterly premium."

Prescott promptly paid all premiums due on said policy, the "official receipt" in each instance of premium payment acknowledging receipt of the premium and further reciting:

"Payment of this premium receipted for, if made on or before the date to which premiums have already been paid, keeps your policy in continuous effect, and if made after that date, reinstates the policy on date of this receipt as provided in policy, until 12 o'clock noon, Standard Time, ................, at which time another premium will be due."

When the defendant Company received on December 30, 1936, the regular quarterly premium due January 1st, 1937, it demanded of Prescott that, as a condition to the continuance of the policy, he sign a form of agreement limiting future liability, as follows:

"That no payment will be made under my policy No. 100-S-1933 on account of disability or loss resulting directly or indirectly from Rheumatism, Arthritis, Neuritis, Sciatica and/or Lumbago."

The insurance policy contained no provision authorizing or permitting the defendant to demand or require any such endorsement.

Upon being requested to advise "the specific provision of the policy upon which (the defendant) contend authorizes (it) to require the execution of any such endorsement," the Company replied:

"Upon Mr. Prescott's refusal to sign this endorsement, we referred his case to our Membership Committee for their consideration. They have finally agreed to withdraw their request for that endorsement."

When remittance was made for the amount of premium which would become due on April 1, 1937, the Company (on March 31st) renewed its demand that the "arthritis" endorsement be executed by Prescott, as a condition to allowing "credit for your premium payment."

The Company "attempts to construe said insurance policy as reserving to the defendant the option of continuing or terminating said insurance contract at the expiration of any quarter, and the defendant contends that said insurance policy is not now in force despite the payment of the premium of $12.00 due April 1, 1937."

Prescott tendered to the Company in advance the money for payment of the premium due April 1, 1937, and has

tendered in advance the money for payment of the premium due July 1, 1937, and is ready, able and willing to pay all sums that may be lawfully required to be paid for premiums in accordance with the terms and provisions of said insurance policy.

Bill of Complaint for declaratory judgment, etc., was filed June 30, 1937. Motion to dismiss was denied; and Answer was filed November 12, 1937. Upon hearing on motion for decree on bill and answer, decree was entered, that:

"Said policy of insurance is unambiguous; that additional provisions 'C' and 'D' contained in said policy give the defendant Insurance Company the right to accept or reject any payment of renewal premiums offered, and that in the absence of an acceptance of any renewal premium offered, said policy terminates and ceases to continue in effect past the end of the previous term for which premium was accepted by the defendant company; that the refusal of the defendant Company to accept the renewal premium tendered in advance by plaintiff for the purpose of renewing said policy from April first, 1937, was authorized, and that in so refusing the defendant company acted within its rights under said policy, and said policy terminated and ceased to continue in effect past the end of the previous term for which premium was accepted by the defendant company."

So it is seen that the question presented is whether or not the condition set out in paragraph (d) of "Additional Provisions" contained in the policy "and the payment in advance of Seventeen ($17.00) Dollars as first payment; and the payment in advance, and *acceptance* by the Association of premiums of Twelve ($12.00) Dollars Quarterly thereafter, beginning with April 1st, 1933, is required to keep this policy in continuous effect"; (italics supplied) was sufficient to retain in the insurer the power to decline to ac-

cept a subsequent premium when tendered in advance and thereby terminate the contract.

Paragraph (c), *supra,* specifically defines the terms of the policy reading, "The term of this policy begins at 12 o'clock noon Standard Time, on date of delivery to and acceptance by the Insured against disease and ends at 12 o'clock noon on date any renewal is due."

So it is clear that the policy was not an unconditionally continuing contract, but was a contract for a stated term renewable for additiónal stated terms on conditions named in the policy. One of the conditions precedent to the renewal for a subsequent stated term was the payment in advance and *acceptance* by the insurer of the required $12.00 quarterly premium. Of course, the insurer could not avoid liability for a claim which had come into being under the terms of the policy by declining to accept renewal premiums tendered after the accrual of the claim.

The disposition rests upon the meaning and effect to be given the word "acceptance" as used *supra.*

The word "accept" means something more than to receive. It means to receive and assent to. Vol. 1, Words & Phrases, 4th Series, 18 and 19, the definition given is, "accept within the meaning of the law means something more than to receive. It means to adopt and to agree to carry out the provisions of the assigned instrument. Acceptance of assignment of lease may be oral or written and may be proved by conduct of the parties" (citing cases). And further it is said, "In case of a bilateral contract, acceptance of an offer need not be expressed, but may be shown by any words or acts indicating offeree's assent to the proposed volume" (citing authority).

In Etheredge, etc., v. Barkley, 25 Fla. 814, 6 Sou. 861, it was held:

"A mere offer not assented to constituted no contract, for there must be not only a proposal, but an acceptance thereof. So long as a proposal is not acceded to it is binding upon neither party and may be retracted."

In Webster Lbr. Co. v. Lincoln, 94 Fla. 1097, 115 Sou. 498, we held, approving what was said in Strong, etc., Co. v. Baars, 60 Fla. 253, 54 Sou. 92:

"In order to create a contract it is essential that there should be a reciprocal assent to a certain and definite proposition, and so long as any essential matters are left open for further consideration, the contract is not complete, and the minds of the parties must assent to the same thing at the same time."

In that case, we also said:

"An acceptance of an offer, to be effectual, must be identical with the offer and unconditional. Where a person offers to do a definite thing, and another accepts conditionally or introduces a new term into the acceptance, his answer is either a mere expression of willingness to treat or it is a counter proposal, and in neither case is there an agreement or contract. 13 C. J. p. 281, par 86; Strong, etc., Co. v. Baars, *supra.*"

Mr. Chief Justice MILLARD, speaking for the Court in Perkins v. Associated Indemnity Corporation, 189 Wash. 8, 63 Pac. (2nd Sec.) 499, dealt with a case containing the standard cancellation clause.

This policy did not contain that clause, but it did embrace the language hereinbefore pointed out and was written for a definite term with a conditional renewal feature. In the Perkins case, *supra,* the court said:

"Ordinarily, a life insurance policy is one issued to be paid on the death of the person insured after the payment of stipulated annual premiums. When a policy provides

for its termination at a particular time like the one in the case at bar, it terminates at that time without any notice. The contract in the case at bar terminated at the expiration of the twelve months period for which the premium had been paid unless an additional premium for an additional twelve months was paid before the expiration of the twelve months during which the policy was effective. Under the additional provisions, subdivision (8) of the contract, the policy was renewable subject to all of its provisions, from term to term, by payment of the premium in advance at the company's premium rate in force at the time of renewal if the company consented to such renewal. It is optional with the insurer under the provisions of a contract like the one in the case at bar whether the policy will be periodically renewed upon each successive expiration. MacDonald v. Metropolitan Life Insurance Co., 304 Pa. 213, 155 A. 491, 77 A. L. R. 353. The contract provides:

" 'This policy may be renewed subject to all of its provisions, from term to term, with the consent of the. Company, and by the payment of the premium in advance of the Company's premium rate in force at time of renewals.'

"There was no absolute right of renewal. The right of renewal was subject to the consent of the insurer. Under the terms of the policy it was optional with the insurer whether. or not to renew the policy.

"The policy expired October 23, 1934. At no time prior to the date of expiration was a further premium ever paid, or deducted by the Company. The policy in the case at bar was not written for an indefinite term like life insurance. Such indeterminate policies are written for life subject to forfeiture for non-payment of premium, etc. Those contracts do not have to be renewed. They continue until one party or the other breaches the contract. The accident insurance policy in the case at bar is. not such a policy. It

was written for a definite term of twelve months, subject to renewal if both parties agreed to do so. In a life insurance policy and like indeterminate contracts, if it is desired to terminate the policy, it is necessary to give notice of cancellation."

See also Guaranty, etc., Ins. Co. v. Winsted (Tex. Civ. App.) 91 S. W. 1164; MacDonald v. Metropolitan Life Ins. Co. (Pa.) 155 Atl. 491, 77 A. L. R. 353.

It must be borne in mind that the matter of cancellation of a policy is not involved in this suit. There has been no effort to cancel the policy. The matter involved here is whether or not the insurer had the power under the contract to decline to renew the policy at the end of a premium payment period.

It is contended that the Company was bound by the agent's representations to the insured when application was made for insurance. As early as the case of Spann v. Baltzell, 1 Fla. 301, we held:

"As a general rule, no verbal agreement between the parties to a written contract made *before or at the time* of the execution of such contract is admissible to vary its terms or affect its construction. All such verbal agreements are considered as waived by, and merged in the written contract.

Such was the effect of the holding in Ross v. Savage, 66 Fla. 106, 63 Sou. 148.

It appears to us there is no ambiguity in the contract under consideration.

There being no ambiguity, the language of the contract must be held to control. Peoples Savings Bank & Trust Co. v. Landstreet, 80 Fla. 853, 87 Sou. 227.

We might write a great deal more and cite numerous authorities to sustain the views herein expressed, but we apprehend that no useful purpose could be served by so doing.

For the reasons stated, the decree should be, and is, affirmed.

So ordered.

WHITFIELD, BROWN and CHAPMAN, J. J., concur.

ELLIS, C. J., dissents.