## MUTUAL BENEFIT HEALTH & ACCIDENT ASS'N v. KENNEDY.
### No. 10556.

Circuit Court of Appeals, Fifth Circuit.
Dec. 1, 1943.

Erle Pettus and Al. G. Rives, of Birmingham, Ala., for appellant.

James W. Aird, Victor H. Smith, William S. Pritchard, and Thos. H. Fox, all of Birmingham, Ala., for appellee.

Before SIBLEY, McCORD, and WALLER, Circuit Judges.

WALLER, Circuit Judge.

Appellant issued an accident policy to the husband of appellee. Insured accidentally drowned in Mobile Bay in the State of Alabama. His widow, the beneficiary, brought suit. The facts were stipulated. Both parties moved for summary judgment and the motion of the plaintiff was granted by the court below. Defendant appealed.

The policy contained the following pertinent provisions:

"Strict compliance on the part of the insured and beneficiary with all the provisions and agreements of this policy, and the application signed by the insured, is a condition precedent to recovery and any failure in this respect shall forfeit to the Association all right to any indemnity."

"If default be made in the payment of the agreed premium for this policy, the subsequent acceptance of a premium by the Association or by any of its duly authorized agents shall *reinstate* the policy, but only to cover accidental injury *thereafter* sustained and such sickness as may begin more than ten days after the date of such acceptance." (Emphasis added.)

"The term of this policy begins at 12 o'clock, noon, standard time, on date of delivery to and acceptance by the Insured against accident and on the thirty-first day thereafter against disease and ends at 12 o'clock noon on date any renewal is due."

"* * * and the payment in advance, and acceptance by the Association, of premiums of Fifteen ($15.00) Dollars Quarterly thereafter, beginning with Feb. 1, 1939, is required to keep this policy in continuous effect."

The last premium receipt, dated June 1, 1940, provided: "Payment of this premium receipted for, if made on or before the date to which premiums have already been paid, keeps your policy in continuous effect, and if made after that date, *reinstates* the policy on the date of this receipt, as provided in the policy, until 12 o'clock noon, standard time, September 1, 1940, at which time another premium will be due." (Emphasis added.)

Under the plain provisions of the policy and insured's last premium receipt, insured's protection was for the definite term, to-wit, from 12 o'clock, noon, June 1, 1940, until 12 o'clock, noon, September 1, 1940. If the premium were not paid by 12 o'clock, noon, September 1, 1940, the policy would not be kept "in continuous force". If the premium were paid and *accepted* after 12 o'clock, noon, September 1, 1940, the policy would be *reinstated*. The coverage of the policy, therefore, was for a definite and fixed term with no grace period allowed. It was not an unconditionally continuing contract.[1]

The insured drowned at 2 o'clock P. M., September 1, 1940. The premium due at 12 o'clock on that day not only had not been paid but no showing whatsoever is made that any effort or attempt to pay the premium was made before the accident or thereafter.

It is contended that since the premium became due on Sunday, and since the next day was Labor Day, a legal holiday in Florida, the insured had until Tuesday, the 3rd of September, in which to pay the premium.

The contract was issued at Miami, insured was a resident of Florida when the policy was issued, and the premiums were required to be paid at Miami in Florida. The rights of the parties will, therefore, be governed by the laws of Florida.

Plaintiff contends that since section 7649, C.G.L. of Florida 1927, F.S.A. § 855.01, makes it a misdemeanor for any person to follow any "pursuit, business or trade on Sunday, either by manual labor or with animal or mechanical power, except the same be work of necessity" and in view

---

[1] A controlling case is Prescott v. Mutual Benefit Health & Accident Association, 133 Fla. 510, 183 So. 311, 314, 119 A.L.R. 525, wherein the Supreme Court of Florida construed an identical policy of Appellant and said:

"So it is clear that the policy was not an unconditionally continuing contract, but was a contract for a stated term renewable for additional stated terms on conditions named in the policy. One of the conditions precedent to the renewal for a subsequent stated term was the payment in advance and acceptance by the insurer of the required $12.00 quarterly premium.

* * * *

"It appears to us there is no ambiguity in the contract under consideration.

"There being no ambiguity, the language of the contract must be held to control. People's Savings Bank & Trust Co. v. Landstreet, 80 Fla. 853, 87 So. 227."

of the provision of section 7651, C.G.L., F.S.A. § 855.03, making it a misdemeanor for a person to employ "his apprentice or servant in labor or other business on Sunday, except it be in the ordinary household business of daily necessity, or other work of necessity or charity", that the premium was payable on the next secular or business day.

■ The Supreme Court of Florida in Hooks v. State, 58 Fla. 57, 50 So. 586,[2] and Greenblatt v. McCall & Co., 67 Fla. 165, 64 So. 748, held that contracts executed on Sunday were not void.

The Negotiable Instrument Statutes of Florida provide that if a negotiable instrument should fall due on Sunday it may be paid on the next succeeding secular day (Secs. 6760 and 6847, C.G.L., F.S.A. §§ 674.01, 675.03), but the case here does not involve a negotiable instrument and such statutes are not applicable.

■ It is urged that principles of the common law and common business practices, apart from statute, permit one to do an act on the following business day when the last day upon which it is required to have been done falls on Sunday. We may assume, but not decide, that this is the law, and the plaintiff's case would still fall, because there is no showing whatsoever of any effort, intent, or purpose on the part of the insured to exercise the privilege of paying the premium either on Sunday or later. We do not have a case where an effort was made to pay the premium, nor where the premium had been transmitted but received late. The policy by its express term expired at 12 o'clock noon.

■ We are not here concerned with the provisions of the policy relating to sick benefits because the term of the policy as to sickness is different from the term of the policy as to accident, and the insured had no claim under the sick benefit provisions of the policy; but some confusion arises out of the use of the words "renewal" and "reinstatement". The premium receipts in evidence use the words "renewal or reinstatement" in reference to acceptance of checks which are dishonored. Paragraph (c) under the Additional Provisions of the Policy provides that the term of the policy "ends at 12 o'clock noon on the date any renewal is due". Six premium receipts are put in evidence. The last receipt is dated June 1, 1940, and provides that the payment of premium, if made before the date to which premiums have already been paid, keeps the policy in continuous force, but if made after that date, reinstates the policy until an hour and date fixed in the receipt. But it appears that two of the premiums receipts offered in evidence bear a date later than the first day of the month on which the quarterly premium became due. For instance, the receipt for the premium due March 1, 1940, was received and countersigned March 6, 1940. The premium due December 1, 1939, was received and the receipt counter-signed December 7, 1939. From these two receipts it is argued that since the company accepted the premium on March 6, 1940, and since the premiums were payable quarterly, the next premium would fall due on June 6, 1940, instead of June 1, 1940, and that the quarterly period, therefore, should run from March 6 to June 6 and from June 6 to September 6, and that since the insured was drowned on September 1, and since the quarterly premium would not be due until September 6, he died while the policy was in force.

The words "renewal" and "reinstatement" are not synonyomus. The insured had the right to an automatic renewal and continuation of his policy provided he paid the premium on or before the date due "as provided in the policy". But if he failed to pay the premium on the date due as

---

[2] Construing Sec. 7649, C.G.L., the Supreme Court of Florida in Hooks v. State, supra, said: "This being a penal statute, of course, the same must be strictly construed. What pursuit, business, or trade does it inhibit the following or performance of on Sunday? Clearly such as requires manual labor or animal or mechanical power to perform it. The execution of a note, mortgage, or other contract requires neither manual labor nor any animal or mechanical power, and we do not think that their execution on Sunday is prohibited by this statute, and that, consequently, the validity of any contract made in this state is not affected by the fact that it was executed or delivered on Sunday. The purpose of our statute, when all of its provisions are considered, seems to be to prohibit the performance on Sunday only of those works or pursuits that from their nature have to be performed in public, and that may, therefore, be offensive to the sensibilities of the Christian community in which they are carried on, if followed on the Lord's Day."

provided in the policy, then the following provision of the policy would govern: "If default be made in the payment of the agreed premium for this policy, the subsequent acceptance of a premium by the Association or by any of its duly authorized agents shall *reinstate* the policy, but only to cover accidental injury thereafter sustained * * *." (Emphasis added.)

It is argued that the payment of the premium on March 6, 1940, was a reinstatement and a new contract because the insurer had the option to accept or not to accept the payment of premium. It may be conceded that a reinstatement under the terms of the policy is a new contract "but it results in putting the old contract back into force with its premium rates and premium dates and its general provisions unchanged". Lanier v. New York Life Insurance Company, 5 Cir., 88 F.2d 196 (text 199).[3] See also Ætna Life Insurance Company v. Dunken, 266 U.S. 389, 45 S.Ct. 129, 69 L.Ed. 342.

It is apparent from the wording of the policy and from the treatment accorded the premium receipts of December 7, 1939, and March 6, 1940, that the company and the insured treated these two late premium payments as reinstatements which placed the policy back in force, with its premium rates and premiums dates and general provisions unchanged, and thus the policy was kept in continuous force from the date of issuance until 12 o'clock, noon, September 1, 1940. According to the evidence in the record, the premiums were paid on or before the time due and thus the policy was automatically renewed from quarter to quarter, with the exception of the two reinstatements above mentioned, and these reinstatements, even if considered as new contracts, put the policy back into force without any change therein except that a reinstatement would not have the effect of covering an accident occurring between the date the premium was due and the date of the reinstatement, but would only cover accidents subsequently occurring. The purpose of this provision was to prevent an insured from letting his policy lapse and then, after he had had an accident or an illness, to secure a reinstatement and recovery for an accident occurring at a time when the policy was not in force.

The court cannot make a new contract. It cannot ignore the fact that this was a term policy that expired at a definite hour unless renewed and kept in continuous force by the payment of a premium before that hour, nor can the court in this instance adopt the reasoning in those cases where an effort was made by a party to make a required payment but was prevented from doing so because of the fact that the bank or the place of business of the payee was closed. Even if the insured had the privilege of paying on the next day, it surely would be necessary to show that he attempted, or at least intended, to exercise that privilege.

The motion of the plaintiff for a summary judgment should have been denied, but the motion of the defendant for a summary judgment should have been granted. The case is reversed for further proceedings not inconsistent with the views herein expressed.

Reversed.

McCORD, Circuit Judge (dissenting).

I do not agree with my colleagues.

For the sum of twenty-five dollars paid in advance on October 3, 1938, the insurance policy here under consideration was issued to insured, and which payment kept the policy in force for nearly four months and until February 1, 1939; thereafter beginning on February 1, 1939, fifteen dollars quarterly was required to keep the policy in continuous effect. Par. (d) under Additional Provisions of the insurance contract. The policy is a *quarterly term contract*.

If the policy of insurance expired at noon on Sunday, I do not think Sunday gave to insured a day of grace or kept the policy in force one minute after noon of that day. Furthermore, I refuse to debate whether or not the burden was upon insurer or insured to show whether the policy was in force. To me there is no smoke or fog which obscures the life of the "term insurance" contract here under consideration and which was carried by a man who met death by drowning two hours after (the majority opinion holds) his insurance had expired.

The evidence is stipulated. Two of the receipts for premiums disclose that insured failed to keep his policy in force and paid

---

[3] Cited and followed in Winer v. New York Life Insurance Company, 138 Fla. 818, 190 So. 894, and Franklin Life Insurance Company v. Parish, 5 Cir., 109 F.2d 276.

premiums after the due dates. I shall advert only to the failure of insured to pay the March 1, 1940, premium until March 6, 1940. At noon of the last day on which the insurance was in force, of course the policy died. The term had expired. The liability under the policy died at exactly noon on that day. If the man was to become insured as against accident then he must enter into a new contract. He sought insurance on March 6, 1940, after his contract had (according to the insurer and the majority opinion) expired. It was discretionary with the insurance company whether it insured him again, for what period and for what amount and under what conditions. If he was *reinstated* all that word meant was that he carried the insurance according to the express terms of the old insurance contract, for the same amount, under the same terms and for the same period of time. For the six days from March 1st to March 6th there was no insurance carried or in effect. *Reinstate* does not and did not mean that the insurance company could accept premium payment for a quarter of a year and start the running of the quarter back to March 1st. Not at all. *Reinstate* meant and should be construed to mean that all the terms and conditions of the old insurance policy were put back in force. It does not mean that insured was to be taxed six days for which no insurance was carried and no liabilities were incurred by the insurance company. To be sure, the parties could have reinstated the same policy after it had been dead for a year but because the insurance company made out a receipt which recited a day and date when the next premium payment was due when in fact and in truth it was not due on that date could in no wise limit the term of the policy for which the number of days had been paid. Insurance company was not warranted in accepting the fifteen dollars, amount it charged for a quarterly period of insurance, and by receipt strip insured of six days of paid-up insurance. For the six days it gave nothing, was out nothing, and no risk of loss was incurred. The insurance receipts do not add to or take from the policy one single right. The March re-receipt *reinstated* the policy. It did not *reinstate* the six days that had passed and gone and were dead. The policy commences to live on the 6th of March and should expire on June 6, 1940. Insured paid for another quarter on June 1, 1940, which gave life to the policy until noon on September 6, 1940.

Suppose insured had waited sixty days after the due date on his term policy and then paid to insurance company the amount of a quarterly premium, could it be concluded that the insurance company could legally give him a receipt which dated the time of payment back sixty days and only insure him for one month? If this reasoning be sound, then if insured waited a full quarter and paid for a quarter, the insurance company would be warranted in dating the policy payment back ninety days and he would have no insurance.

The Lanier v. New York Life Ins. Co., 5 Cir., 88 F.2d 197, is not applicable law in this case. There the insurance company sought to cancel four life insurance contracts and does not deal with term insurance. Likewise, Ætna Life Ins. Co. v. Dunken, 266 U.S. 289, 45 S.Ct. 129, 69 L. Ed. 342. There, the issue was whether the contract was controlled by Missouri or Texas law. Since the contract here is a Florida contract, it must be controlled by the Florida decisions, and the last decision we are able to find is Prescott v. Mutual Ben. Health & Accident Association, 133 Fla. 510, 183 So. 311, 315, 119 A.L.R. 525. We agree with the majority opinion that this is a controlling case. While the issue there had to do with the right of the insurance company to terminate the contract at the expiration of the term, it was nevertheless a term policy such as we have here under consideration. I am constrained to believe that it upholds the views which I maintain should control in this case. That case cites with approval the case of Perkins v. Associated Indemnity Corporation, 189 Wash. 8, 63 P.2d 499, and it quotes from that decision:

"Ordinarily, a life insurance policy is one issued to be paid on the death of the person insured after the payment of stipulated annual premiums. When a policy provides for its termination at a particular time like the one in the case at bar, it terminates at that time without any notice. The contract in the case at bar terminated at the expiration of the twelve-month period for which the premium had been paid unless an additional premium for an additional twelve months was paid before the expiration of the twelve months during which the policy was effective. Under the additional provisions, subdivision (8) of the contract, the

policy was renewable subject to all of its provisions, from term to term, by payment of the premium in advance at the company's premium rate in force at the time of renewal if the company consented to such renewal. It is optional with the insurer under the provisions of a contract like the one in the case at bar whether the policy will be periodically renewed upon each successive expiration. MacDonald v. Metropolitan Life Insurance Co., 304 Pa. 213, 155 A. 491, 77 A.L.R. 353. The contract provides:

" 'This policy may be renewed subject to all of its provisions, from term to term, with the consent of the Company, and by the payment of the premium in advance of the Company's premium rate in force at time of renewals.'

"There was no absolute right of renewal. The right of renewal was subject to the consent of the insurer. Under the terms of the policy, it was optional with the insurer whether or not to renew the policy.

"The policy expired October 23, 1934. At no time prior to the date of expiration was a further premium ever paid, or deducted by the company. The policy in the case at bar was not written for an indefinite term like life insurance. Such indeterminate policies are written for life subject to forfeiture for nonpayment of premium, etc. Those contracts do not have to be renewed. They continue until one party or the other breaches the contract. The accident insurance policy in the case at bar is not such a policy. It was written for a definite term of twelve months, subject to renewal if both parties agreed to do so. In a life insurance policy and like indeterminate contracts, if it is desired to terminate the policy, it is necessary to give notice of cancellation."

The Florida decision also cites with approval, as did the Perkins case, the case of MacDonald v. Metropolitan Life Insurance Co., 304 Pa. 213, 155 A. 491, 77 A.L.R. 353, wherein it is said:

"The question here is whether the reinstatement of the policy was from the expiration of the first six months (January 18, 1930), or from the countersigning of the receipt (March 1, 1930). The trial court, taking the latter view, entered judgment for plaintiff, from which the defendant brought this appeal. We find no reason to differ from this conclusion. While so far as appears there is no similar case in Pennsylvania, the weight of authority elsewhere sustains the conclusion of the trial court. . * * * To hold that the policy, reinstated for six months, began that term on January 18, is to pay the company for a risk during the six weeks which it did not incur. As the trial court says:

" 'If the contention of defendant is sound, then MacDonald, for the payment of the six months' premium, received insurance for only four months and eighteen days. Likewise, if the contention of defendant is sound, the payment of the premium five months after the expiration of the original term would have given MacDonald insurance for one month only, and the payment of the premium six months after the expiration of the original term would have given him no insurance at all. * * *'

"Where, as here, it is optional with the company whether or not to reinstate an expired policy, the act of so doing constitutes a new contract and starts a new period of coverage. * * *"

"A construction which gives insured insurance for less period of time than that covered by the premium which he has paid should not be adopted." 32 Corpus Juris 1165.

No extra charge was made for issuing the policy of insurance. The contract is unlike the insurance contract in the cases of Lanier v. New York Life Ins. Co. and Ætna Life Ins.. Co. v. Dunken, supra. Moreover, the promise of additional insurance had already been lost to insured by failure to pay the quarterly premium when due, (See 3 under Standard Provisions of policy) and the company could cancel the policy at the end of any quarter. The reinstatement being dated back gave absolutely nothing for the uninsured days.

A contract of insurance will, if possible, be so construed as to protect the insured, and doubts, if any, will be resolved in his favor. Mutual Life Ins. Co. v. Hurni Packing Co., 263 U.S. 167, 44 S.Ct. 90, 68 L.Ed. 235, 31 A.L.R. 102; McMaster v. New York Life Ins. Co., 183 U.S. 25, 22 S.Ct. 10, 46 L.Ed. 64. Winer v. New York Life Ins. Co., cited by the majority does not touch the question here.

It will be found, I think, by a careful reading of the Prescott case and the cases cited therein approvingly, that my colleagues have failed to follow the last decision of the Supreme Court of Florida touching the issue here before us. I am of opinion they have sold the Erie-Tompkins case (Erie R. Co. v. Tompkins, 304

**30**

U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188, 114 A.L.R. 1487) "down the river".

The judgment of the lower court was right as rain. It should have been affirmed.

I dissent.