**FREEPORT SULPHUR CO. v. AETNA LIFE INS. CO.**

**AETNA LIFE INS. CO. v. FREEPORT SULPHUR CO.**

No. 14356.

United States Court of Appeals
Fifth Circuit.

July 24, 1953.

Rehearing Denied Sept. 15, 1953.

Monte M. Lemann, Monroe & Lemann, New Orleans, La., Nicholas Callan, New Orleans, La., and Thomas R. Vaughan and

Pearson E. Neaman, New York City, of counsel, for Freeport Sulphur Co.

Eugene Saunders, Milling, Saal, Saunders, Benson & Woodward, New Orleans, La., George S. Brengle, Bigham, Englar, Jones & Houston, New York City, W. Braxton Dew, Hartford Conn., for Aetna Life Ins. Co.

Before HUTCHESON, Chief Judge, and RUSSELL and STRUM, Circuit Judges.

STRUM, Circuit Judge.

This action was instituted by Freeport Sulphur Company to determine, by declaratory judgment, the period of duration of the contract hereinafter described, and for incidental relief. 28 U.S.C.A. §§ 2201, 2202.

Freeport is engaged in the mining of sulphur in Louisiana and Texas. In 1933, it desired to institute a pension plan for the benefit of its then and future employees, and those of its affiliated companies, by which annuities would be provided for said employees when they reached the age of retirement. To this end, beginning in August, 1933, Freeport commenced negotiations with the defendant Aetna Life Insurance Company, and another company, seeking to formulate a satisfactory group annuity plan. After spirited competition, the business was awarded to Aetna, which issued a group annuity contract dated April 1, 1934.

Under the policy, employees who had been in the employ of Freeport or its affiliates, for one year or more, and new employees after one year of employment, who had not attained the age of 65 years for men, 60 years for women, could apply for, and Aetna would issue to them, annuity policies maturing at stated ages, upon the payment by Freeport of designated premiums, provided the employees remained in the employment of Freeport, or its affiliates, until their normal retirement age.

The contract obligates Aetna to cover every qualified employee who makes application to the employer (not to Aetna), and for whom the required premium is paid. Coverage becomes effective as to each such employee when Freeport gives notice to Aetna that an application therefor has been made by the employee to the employer.

Thus, coverage is virtually automatic upon the application of a qualified employee. Aetna is not authorized to reject any such application, so long as the employee is eligible under the terms of the master contract. Premiums are paid annually by Freeport, which partially reimburses itself by deductions from the pay of the participating employees, both employer and employee bearing a portion of the cost. Aetna reserved the right to modify the premium rates from time to time after the first five years of operation of the policy, by increasing the rates by not more than 7½% of the original rate for the period of 1939–1944, and further increases of not more than 2½% for each additional five year period. See note 1, post. Aetna exercised these rights at the expiration of each five year interval.

The contract remained in force without interruption from April 1, 1934 until November 23, 1949, about 15½ years, when Aetna notified Freeport that after January 1, 1950, no new coverages would be issued under the contract. This amounted to a cancellation of the contract as to new coverages, but did not undertake to affect or impair the rights of employees already covered. It was this notice which precipitated this controversy.

The contract is unambiguous, except that it does not specify how long it shall remain in effect. The absence of such a clause is the basis of this suit. Freeport contends that the contract remains in effect perpetually, so long as premiums are paid. Aetna claims that the contract is terminable at will by either party, insofar as it remains executory, that is, as to future coverages, but concedes that the rights of employees already covered can not be impaired. The district judge accepted neither contention, but held that the contract is terminable by Aetna upon notice, after a reasonable time, which he determined to be 25 years after its inception, which would be April 1, 1959, thus leaving a further effective period of approximately 6½ years from the date of the decree below. 107 F.Supp. 508, 513. Both parties appeal from those portions of the decree adverse to them.

■ In reaching his conclusions as to the interpretation and effect of the contract, the district judge thus correctly stated the law: "This employees' group annuity policy is a unilateral contract, an exchange of a promise for an act, a situation in which the insurer, in consideration of the annual payment of the premium by the employer, gives the employer, among other things, a continuing option to purchase annuities for its new employees at the price fixed in the contract. Such an option is not terminable at will by the insurer. Since no term for the option is provided in the contract, it is terminable after a reasonable time. Restatement, Law of Contracts, §§ 24, 47; Williston on Contracts, Revised Edition, Vol. 1, §§ 38, 61; Holt v. St. Louis Union Trust Co. [4 Cir., 52 F.2d 1068]; Bach v. Friden Calculating Mach. Co., 6 Cir., 155 F.2d 361; Cohen & Sons, Inc. v. M. Lurie Woolen Co., Inc., 232 N.Y. 112, 133 N.E. 370; Pope v. Terre Haute Car & Mfg. Co., 107 N.Y. 61, 13 N.E. 592. * * * One effect of Freeport's performance under the contract is to give Freeport an option to purchase for its new employees annuities pursuant to the contract. The consideration supporting the contract also supports the option which is one of the terms of the contract." Of course, the contract would "discontinue" at any time Freeport ceased paying the required premiums.

■ We agree with the foregoing conclusions of the district judge, as well as his conclusion that the contract should be interpreted according to the laws of New York, where it was delivered to Freeport and became effective, after having been submitted to, and approved by, the Superintendent of Insurance of that state. N. Y. Life Ins. Co. v. Chapman, 8 Cir., 132 F.2d 688; Mutual Benefit Health & Acc. Ass'n v. Kennedy, 5 Cir., 140 F.2d 24; Order of U. C. T. v. Meinsen, 8 Cir., 131 F.2d 176; 11 Am.Jur. 386(100). Compare Boseman

v. Connecticut Gen. Life Ins. Co., 301 U.S. 196, 57 S.Ct. 686, 81 L.Ed. 1036; Transit Bus Sales v. Kalamazoo Coaches, 6 Cir., 145 F.2d 804; Pasquel v. Owen, 8 Cir., 186 F.2d 263; Newspaper Readers Service v. Canonsburg Pottery Co., 3 Cir., 146 F.2d 963; Cockburn v. O'Meara, 5 Cir., 141 F.2d 779.

■ We also agree with the district judge that the contract is not illegally discriminatory under sec. 209 of the New York Insurance Law, McK.Consol.Laws, c. 28, which prohibits any insurance company doing business in that state from making "any unfair discrimination between individuals of the same class" in the purchase of life insurance or annuity contracts. See also Louisiana Statutes Annotated Rev.Stat. 1950, Title 22, secs. 652, 1214.

■ The district judge also correctly held that the contract was not void for lack of mutuality. The doctrine of mutuality is inapplicable here. It should be borne in mind that because of the distinctive characteristics which inhere in insurance contracts of this nature, cases relating to other types of contracts are usually inapposite upon the question of mutuality.

We differ with the district judge only as to what is a "reasonable time" for the operation of the contract. We think 25 years is too long. Since April 1, 1934, economic conditions have radically changed, interest rates have sharply declined, and life expectancy has substantially lengthened. All these things enter into the rates to be charged for such a policy as this.

In reserving the right to modify the premium rates on this policy, however, Aetna *specifically* provided for increases in rates through March 31, 1954, indicating that Aetna itself contemplated that the contract would remain in effect at least until that date.[1]

1. The policy provides, *inter alia*, that "The company also reserves the right * * * to modify the premium rates in Tables A and B to be used in the calculation of premiums with respect to employees whose coverage hereunder commences five years or more after the date of this contract; provided that at no time be-

tween April 1, 1939 and March 31, 1944 shall premium rates be established which are more than 7½% greater than the original rates, at no time between April 1, 1944 and March 31, 1949 shall premium rates be established which are more than 10% greater than the original rates, at no time between April 1, 1949 and

In the absence of a specific provision as to duration, which Freeport could have insisted upon, and in view of substantially changed conditions already referred to, we regard 20 years as a reasonable period of duration, after which Aetna is entitled to discontinue new coverages. Compare Texas & P. Ry. Co. v. City of Marshall, 136 U.S. 393, 10 S.Ct. 846, 34 L.Ed. 385. Perpetual contracts, though sometimes sanctioned, are not favored in the law. A construction of a contract conferring a right in perpetuity will be avoided unless compelled by the unequivocal language of the contract. Holt v. St. Louis Trust Co., 4 Cir., 52 F.2d 1068; Town of Readsboro v. Hoosac Tunnel Co., 2 Cir., 6 F.2d 733. Of course, existing coverages as of March 31, 1954, are not affected, so long as premiums are paid.

Accordingly, the decree appealed from is modified so as to designate April 1, 1954, as the date upon which Aetna may discontinue the contract as to new coverages. As so modified the decree is

Affirmed.

RUSSELL, Circuit Judge (dissenting).

I am unable to join my colleagues in directing modification of the judgment of the trial court which held that twenty-five years was "a reasonable time" during which the insurance contract, which expressed no term, should remain operative. Certainly Aetna Life Insurance Company is not entitled to complain of this period under all of the circumstances of the case. Generally, where the parties to a contract fail to specify a definite term for its continuance, with the result that the judicial process must be resorted to in order to determine a "reasonable time" which should elapse before it is terminated, the primary effort of the courts is to determine the time which,

as reasonable men, the parties to the contract ought to have understood each other to have in mind at the time the contract was executed, but which time was, nevertheless, for some reason, omitted from the contract. In the present case, consideration of the negotiations leading up to the insurance contract, the nature, terms and provisions of the contract as executed, and the purpose sought to be attained supports the finding of the trial court, if, indeed, the enforcement of a longer period would not have been justified. The insurer, having cautiously provided, so far as it could foresee, for each and every contingency affecting its liability and the compensation it should receive for its assumption, even to the extent of providing what it doubtless deemed to be protection in any and all events by its prescribed rate of increase in premiums during successive periods of five years each, which would equal, though not exceed, the prevailing rates which underwriting conditions indicated at any particular time, (see note 1 in the majority opinion), can properly be regarded, at the inception of the contract, as having desired and intended that it should continue for a long period of time. With favorable rates, a large insurer desires increases in amounts of insurance in force. Freeport, adopting the plan for its employees, may well be regarded as having had a similar understanding as to the existence of its option to insure new employees. The subsequent decline in interest rates and the increase in life expectancy, while they might make the contract burdensome for the time being, do not, I think, affect what must have been the understanding of the parties at the time the contract was executed.

I think the finding of the trial court is so well supported by the facts and circumstances of the case that the insurer has no cause for complaint.

March 31, 1954 shall premium rates be established which are more than 12½% greater than the original rates, et cetera, the maximum permissible difference between the new rates and the original rates increasing by 2½% of the original rates for each five year period entered upon thereafter; and provided further

that no table of premium rates shall be established which results in a greater total premium than the table of premium rates then being used by the Company in the new Group Annuity contracts which it is then issuing providing similar benefits for employees in the same premium rate classification."