**MASSEY–FERGUSON, INC., Appellant,**
v.
**BENT EQUIPMENT COMPANY,**
**Appellee.**
**No. 18143.**

United States Court of Appeals
Fifth Circuit.
Oct. 11, 1960.

Delbridge L. Gibbs, Francis P. Conroy, Jacksonville, Fla., for appellant.

Davisson F. Dunlap, Clarence G. Ashby, Jacksonville, Fla., Adair, Ulmer, Murchison, Kent & Ashby, Jacksonville, Fla., of counsel, for appellee.

Before CAMERON, BROWN and WISDOM, Circuit Judges.

CAMERON, Circuit Judge.

Before us is an appeal from summary judgment entered in favor of appellee Bent Equipment Company, plaintiff below, awarding damages in the sum of $72,399.67 against appellant Massey-Ferguson, Inc., defendant in the court below. The crucial questions arise from an order entered by the court below striking certain defenses included in the answer of Massey-Ferguson.

The complaint as amended claims substantially the amount recovered based upon the alleged breach of a written contract between appellant and appellee covering purchase by appellant of the assets and business, including accounts and notes receivable, of appellee. Bent had, directly and through several subsidiary corporations, conducted the business of franchised distributor of appellant's manufactured products in Florida and a part of Georgia for a period of several years prior to execution of the purchase-sale contract of September 13, 1957.

In this contract appellant agreed to purchase the "customer notes and accounts receivable on Bent's books at the aforesaid date of termination [October 15, 1957] of said franchises for the book value thereof less the related reserve for doubtful accounts on Bent's books at that date." [1] Following the quoted words is the paragraph of the contract around which most of the argument of the parties is centered:

"9. Bent shall execute all assignments or other documents necessary to convey to M-H-F (appellant) full rights to said notes or accounts receivable, including the right to bring suit for collection thereof, and Bent warrants that the notes and accounts receivable represent true and valid claims against the debtors."

The pleadings disclosed without conflict that appellant paid appellee for all accounts in obedience to the terms of the contract quoted above, except twenty accounts the aggregate of which formed the basis of this action. Appellant declined to pay those accounts, justifying its refusal, in its argument before us, upon two grounds:

1. That the warranty above quoted constituted a warranty to the appellant that the notes and accounts were just debts due appellee, that they were collectible, or, at least, that appellee had no knowledge that they were not collectible; that appellant, with appellee's knowledge, relied upon said warranty, and that appellee breached this warranty in tendering said twenty notes and accounts to appellant.

2. That a confidential and fiduciary relationship existed between appellant and appellee, and that appellant had a right to rely, and did rely, upon repre-

---

1. The contract, as above shown, covered purchase by appellant of all of the assets of all of the businesses of appellee, but this controversy involves the notes and accounts only.

sentations made to it during the negotiations preceding the contract; that appellee falsely, fraudulently and knowingly represented to appellant that said notes and accounts were collectible, and that it had no knowledge that they were otherwise, when appellee knew that the same were not then, and had not for sometime been, collectible; that appellant relied upon said representations with appellee's knowledge, and that appellee's course of action constituted a fraud, which absolved appellant from any liability for payment of said disputed notes and accounts.

The court below granted a motion filed [2] by appellee to strike all of the allegations contained in appellant's answer setting forth said defenses, as well as its counterclaim and other pleadings asserting the same facts and claims.

■■ We think the court correctly granted the motion to strike that portion of the answer included under contention 1 supra. The action was upon a writing and the warranty which the parties chose to insert in it is in language which is clear, definite, explicit and unambiguous, and there is no lack of harmony between the warranty and any other provisions of the contract. Under such circumstances it is the court's duty to determine the intent of the parties from the language they put into their writing without resort to the aids sometimes permitted, such as parol evidence of prior negotiations between the parties, to assist it in arriving at the intention of the parties. This is clearly established by decisions of this Court,[3] by the general law [4] and by the decisions of the Florida courts.[5]

■■ We think the court erred, however, in striking the defense based upon fraud, as set forth in appellant's ground of argument number 2 supra. It is always proper that the court, in construing a writing, put itself, as nearly as possible, in the position of the contracting parties in determining the meaning of the words they used.[6] So placing ourselves, we think it is clear that the allegations of appellant's answer setting up fraud make a prima facie case which should be heard by the court and submitted to and determined by the factfinder if appellant is able to produce evidence of the quantity and quality required to establish charges of fraud.[7]

2. Cf. Rule 12(f) F.R.Civ.P., 28 U.S.C.A.

3. James H. Craggs Construction Co. v. King, 1960, 274 F.2d 1, 8; Major Appliance Co. v. Hupp Corp., 1958, 254 F.2d 503; Baker v. Nason, 1956, 236 F.2d 483; Petroleum Financial Corp. v. Cockburn, 1957, 241 F.2d 312; and Fidelity-Phenix Fire Ins. Co. v. Farm Air Service, 1958, 255 F.2d 658.

4. Cf. 12 Am.Jur., Contracts, §§ 248 and 249.

5. Gendzier v. Bielecki, Fla.1957, 97 So.2d 604; Gulf Theatres v. Guardian Life Ins. Co., 1946, 157 Fla. 428, 26 So.2d 188; Prescott v. Mutual Ben. Health & Accident Ass'n, 1938, 133 Fla. 510, 183 So. 311, 119 A.L.R. 525; and Peoples Savings Bank & Trust Co. v. Landstreet, 1920, 80 Fla. 853, 87 So. 227.

6. T. B. Walker Manufacturing Co. v. Swift & Co., 5 Cir., 1912, 200 F. 529, cited in James H. Craggs Construction Co. v. King, supra; and cf. Lockwood v. Ohio River R. Co., 4 Cir., 1900, 103 F. 243.

7. Appellant's answer charges that, by reason of the long and mutually satisfactory business relationship between the parties over a period of years, there existed a close, confidential and fiduciary relationship between them, which relationship was continued by the contract sued on for an additional period of five years during which Van Etten Bent was retained by appellant for consultive service at a salary of $10,000 a year; that appellant had no knowledge of appellee's affairs except for representations made by appellee's officers and employees during the negotiations leading to the agreement; that appellee falsely, fraudulently and knowingly represented to appellant that the notes and accounts involved were collectible and that it had no knowledge that they were otherwise, but that appellee knew that the same were not then, or for some time theretofore, collectible; and, that appellant relied upon those representations, making no inquiry independent thereof, and that this fact was known to appellee.

It is further charged that a large portion of the notes and accounts sued on were given by corporations wholly owned or controlled by appellee, and that appel-

We are not unmindful that, under Rule 9(b) F.R.Civ.P., averments of fraud must be stated with particularity. We think the averments of appellant's pleadings relating to fraud conform to this requirement. We do not hold that the mere relationship between appellant and appellee under which appellee had been distributor for many years of appellant's products, standing alone, creates a fiduciary relationship. In fact, it is manifest from this whole record that these parties were dealing at arm's length, appellant being the one desiring to sever the relationship and insisting thereon; and that it wrote the contracts involved. But the relationship of Van Etten Bent, as the prime actor in appellee's dealings, coupled with the projection of the relationship for five years after the execution of the contract, are entitled to consideration in determining whether or not such a relation of trust actually existed.

Fraud is a matter of such indefinite character that, ordinarily, a charge of it should not be stricken from a pleading unless it is clear that, under no circumstances, could proof, conforming to the strict requirements provided in fraud charges, be introduced under the pleadings, which would probably convince the trier of the facts that fraud had in fact been perpetrated.

What we said in White v. Union Producing Co., 1944, 140 F.2d 176, 178, is persuasive here: "Fraud vitiates everything it touches. It is difficult to define; there is no absolute rule as to what facts constituted fraud; and the law does not provide one 'lest knavish ingenuity may avoid it.' " Much the same idea was expressed in our decision of Abbott v. United States, 1956, 239 F.2d 310, 314, where, quoting from one of our earlier cases and citing several others from various courts, we said: " * * * the law does not define fraud; it needs no definition; it is as old as falsehood and as versable as human ingenuity."

Whether fraud has been committed ordinarily requires the determination of questions of fact by the jury, if the case is one tried by jury, or by the court if the case is tried without a jury. 24 Am.Jur., Fraud and Deceit, § 291, p. 137; 37 C.J.S. Fraud § 123, p. 448; and § 124, p. 451.[8] We do not, therefore, think that the court should have stricken from the pleadings the allegations of fraud, but should have heard the evidence; and if it should satisfy the standard required to establish a case of fraud, the trier of the facts should have been permitted to pass upon the evidence.

The court did not give any reason for granting a summary judgment, but such an action followed much as a matter of course after the defenses interposed by appellant had been stricken. Appellee filed in support of the motion the affidavit of Van Etten Bent, its president, which established the remaining allegations of the complaint, most of which had been admitted in the answer.[9] The final

---

lee knew that said corporations were insolvent and unable to pay the notes when said representations were made; and that appellee had fraudulently represented that it had pursued a sound credit policy and had maintained realistic reserves for bad debts, which it had, in fact, failed to do notwithstanding it knew that the notes and accounts were uncollectible.

Very much the same averments were contained in the counterclaim which was filed by appellant against appellee and which it asked leave to file against Van Etten Bent, whom it sought unsuccessfully to bring into the suit as an involuntary plaintiff. The rulings with respect to these portions of appellant's pleadings ought to have been consonant with what is herein said with respect to the answer.

8. The courts of Florida subscribe to this rule: Biscayne Boulevard Properties, Inc. et al. v. Graham, Fla.1953, 65 So.2d 858, and Casey v. Welch, Fla.1951, 50 So. 2d 124. And this Court is in accord: American Fire & Casualty Co. v. Finn, 1950, 181 F.2d 845, reversed on other grounds, 341 U.S. 6, 71 S.Ct. 534, 95 L. Ed. 702; Southwestern Packing Co. v. Cincinnati Butcher's Supply Co., 1943, 139 F.2d 201; Florence et al. v. Crummer, 1938, 93 F.2d 542.

9. Appellant offered no evidence except exploratory depositions it took of four of ap-

judgment from which the appeal is taken was rendered, of course, upon the basis of the court's prior wrongful action in eliminating entirely the defense of fraud; and, because of this error, it cannot stand. The judgment is, therefore, reversed and the cause is remanded for further proceedings consistent with this opinion.

Reversed and remanded.

pellee's officers; but they did not tend to contradict the affidavit of Mr. Bent insofar as it related to issues left in the case. The depositions were, in fact, for the most part, irrelevant since the defenses to which they purported to relate had been stricken.