CHARLES CARROLL, Chief Judge.
This is an appeal from an adverse summary judgment, taken by the personal representative of the plaintiff who died during the pendency of the cause.
The pertinent facts are disclosed by the record. The late George T. Baker and the appellee L. B. Maytag, Jr. entered into an agreement on April 6, 1962, for sale by the former to the latter of 250,000 shares of stock of National Airlines, Inc. for $6,400,-000. The agreement stated that closing was to be completed by April 27, 1962, with a proviso that if Maytag did not pay the purchase price on or before that date his right to purchase would “terminate and thereupon both parties shall be fully released from all obligations hereunder.”[1]
Concurrently with that written agreement Maytag gave Baker a letter dated April 6, 1962, confirming an oral understanding that Baker would have a “right of first refusal,” until December 21, 1965, to repurchase stock offered for sale by the purchasers (Maytag and his nominees) by “meeting (within 15 days after notice there *302 of) a bona fide offer for all or any portion of such stock.” [2]
The sale was closed on April 26, 1962, at which time the purchase price was paid by Maytag, and Baker delivered the stock to him. In the course of conferences held on the 24th and 25th of April, between the parties and the lawyers representing them, there was discussed the desire of Maytag to be entitled to resell part of his stock within 60 days, to which sale the “first refusal” would not apply. As a result of such discussions, a letter bearing the date of April 26, 1962, was prepared jointly by the parties’ lawyers in which Maytag advised Baker that he (Maytag) personally was purchasing 193,138 shares of the stock, confirmed the “first refusal” as previously provided for, and injected a provision that the right of “first refusal” would not apply to a single sale by Maytag if made within the following 60 days.[3] The closing took place in the afternoon of April 26. In the morning of that day Baker was informed by his attorney regarding the Maytag letter dated April 26, and had knowledge of the contents of that letter prior to the time of the closing. The letter in question was one of the papers or documents present and involved in the closing on April 26.
Thereafter, by a letter of June 1, 1962, Maytag informed Baker that he was selling a substantial block of his stock to one Dudley Swim on that date, and therein took the position that such sale was within the exception he had made to the “first refusal” arrangement, stating that nevertheless he was giving Baker notice that the transaction was taking place.[4] The record reveals the *303 sale of 100,000 shares of the stock by Maytag to Swim, as referred to in that letter, was made on or about June 1.
Although the position subsequently taken by Baker was that the sale to Swim (of which he was notified in writing on June 1) was subject to a right of “first refusal,” it must be noted that Baker made no timely attempt to exercise the right of refusal he claimed under the letter of April 6 which gave him “fifteen days after notice to meet a bona fide offer for (sale) of all or any portion of said stock.” The action taken by Baker, on July 27 which was 57 days after Maytag’s notice to him of the intended sale to Swim, was not a demand to purchase the stock on the basis of a “first refusal,” but consisted of voicing an objection to sale of the stock by Maytag to Swim.
Approximately a year later, on May 2, 1963, Baker filed this suit against Maytag, seeking a declaratory decree construing “the various letter agreements exchanged between the parties” and determining their rights and obligations thereunder, and for specific performance to require Maytag to deliver to Baker 100,000 shares of the stock at the price paid therefor by Swim, or, in the alternative, for damages against Maytag for the difference between the market price of the stock in question and the price to Swim.
On the record of the case on the motions for summary judgment the trial judge was not in error in holding there were no genuine triable issues of fact and that the defendant was entitled to judgment as a matter of law. The appellant challenges the applicability and correctness of the ground of estoppel, as referred to and relied on by the trial court in the judgment. We find no error there. Having made the sale with knowledge of Maytag’s letter of April 26 modifying the earlier “first refusal” arrangement, Baker subsequently could not avoid the effect thereof, whereby it excepted from the “first refusal” arrangement a later single sale of stock made by Maytag (to Swim) within 60 days after closing. In the judgment appealed,, the trial court stated:
“ * * * [T]he doctrine of estoppel precludes the Plaintiff’s decedent, George T. Baker, from denying that all correspondence exchanged between the Defendant and Plaintiff’s said decedent constituted the ultimate agreement and contract between the parties for the purchase and sale of the subject National Airlines stock prior to or simultaneous with the delivery of said stock and payment of the consideration therefor.”
That holding is consistent with the applicable law as stated in 7 Fla.Jur., Contracts, § 78, viz:
“When an agreement is evidenced by two or more writings, the writings must be construed together. This rule is not necessarily confined to instruments executed at the same time by the same parties for the same purpose; instruments entered into on different days, but concerning the same subject matter, may under some circumstances be regarded as one contract and interpreted together. Where a contract is embodied in several instruments, its true meaning is to be ascertained from a consideration of all the instruments and their effect upon each other. But where a variety of instruments form one transaction, the law will not give effect to any one instrument unless the whole transaction is completed.”
Moreover, as contended for by the appellee, we hold that the judgment of the trial court is supportable on the further ground that the “agreement” of April 6 constituted an offer by Baker; that the letter of “first refusal” dated April 6 was *304 a material part of the offer; and that the change in the terms thereof by Maytag’s letter of April 26 which reduced the scope of the “first refusal” arrangement constituted a counter-offer, on the basis of which the sale then proceeded. Strong & Trowbridge Co. v. H. Baars & Co., 60 Fla. 253, 54 So. 92, 93-94; Prescott v. Mutual Ben. Health & Accident Ass’n, 133 Fla. 510, 183 So. 311, 314-315, 119 A.L.R. 525; 1 Corbin, Contracts, § 89.
What transpired thereafter, that is, the sale of 100,000 shares of the stock by Maytag to Swim, made within 60 days after closing, was a transaction to which the right of “first refusal” did not apply, on consideration of all of the documents involved on the basis of which the principal sale of April 26 was consummated.
We reject as without merit the appellant’s contention that the trial court’s denial of a motion of the defendant to dismiss the complaint for failure to state a cause of action precluded the granting of summary judgment against the plaintiff. The complaint set forth the several writings making up the option contract, and as the action was one for declaratory decree, it was consistent to deny the defendant’s motion to dismiss and thereafter to construe the documents and determine and decree the rights of the parties thereunder. See Local No. 234, etc. v. Henley & Beckwith, Inc., Fla.1953, 66 So.2d 818, 822, and Bell v. Associated Independents, Inc., Fla.App. 1962, 143 So.2d 904, 908, 12 A.L.R.3d 847. Also, it should be noted that here the summary judgment was not entered on the pleadings alone, but on them as supported by depositions of the parties and others. See Bell v. Associated Independents, Inc., supra; 6 Moore’s Federal Practice, ¶ 56.02 [3],
For the reasons stated, the judgment appealed from is affirmed.
Affirmed.

. That agreement, which did not obligate Maytag to purchase the stock, was an option by Baker to Maytag, for which, as recited therein, Maytag paid a consideration of $100.

.
“April 6, 1962
“Mr. G. T. Baker
National Airlines, Inc.
Miami, Florida
“Dear Ted:
“We have discussed a right of first refusal on the 250,000 shares of stock of National Airlines, Inc., which I am purchasing from you. The terms that we have discussed include the facts that such right shall exist until December 21, 1965 and that during such period of time you would have fifteen days after notice to meet a bona fide offer for all or any portion of said stock.
“At the time we close this transaction it is my intention to register the stock in perhaps as many as four names. The purpose of this letter is to assure you that as a part of the closing, I will secure for you proper letters or other instruments from the persons in whose names the stock is to be registered which will preserve such right of first refusal.
“Very truly yours,
“L. B. Maytag, Jr.”

.
“April 26, 1962
“Mr. G. T. Baker
National Airlines, Inc.
Miami, Florida
“Dear Mr. Baker:
“In the transaction whereby you have sold 250,000 shares of Common Stock of National Airlines, Inc., I am one of the purchasers and have purchased 193,-138 shares. I hereby confirm the understanding relative to right of first refusal reached at the time this sale and purchase was agreed upon and hereby grant to you a right of first refusal on the sale of such stock. Such right shall exist until December 21, 1965, and during that period of time I agree that I will notify you, in writing, of any proposed sale of all or a portion of my stock and give to you fifteen days after such notice in which to meet the price set out in such offer and notice.
“The above right of first refusal shall not apply to a single transaction involving a sale of a portion of the stock if such transaction shall occur within sixty days of the date of this letter.
“Very truly yours,
“L. B. Maytag, Jr.”

.That letter of June 1, 1962, from Maytag to Baker was as follows:
“You will remember that at a time earlier this year my associates and I purchased from you some 250,000 shares of the common stock of National Airlines, Inc.
“We gave to you certain letters granting to you a right of first refusal on any substantial sale of the stock; my letter of first refusal excepting from this right a single transaction if made within 90 days of the date of closing. In connection with this exception and falling within the terms thereof, I intend to sell today to Mr. Dudley Swim a substantial block of my stock. Even though such *303 sale falls within the exception and, therefore, is not subject to a right of first refusal, I felt it proper to inform you of the transaction.”