*212
 
 Eabl, J.
 

 The Tonawanda Eailroad Company was incorporated by the act, chapter 241 of the Laws of 1832, to construct and operate a railroad from Bochester, in the county of Monroe, to Attica, in the county of Genesee. The first section declares that certain persons named and others should be, and for the term of fifty years from the passage of the act should continue to be, a body corporate and politic. Section 15 provides that in addition to the general powers given by the Bevised Statutes to corporations the Tonawanda Eailroad Company should have certain specified powers, among which was the power “to enter upon any of the lands lying within the contemplated range of the said railroad for the purpose of examining, surveying and establishing its lines.”
 

 Section 16 provides: “In case the corporation shall not be able to acquire the title to the lands within which said railroad shall be laid by purchase or voluntary cession, it shall be lawful for the said corporation to appropriate so much of such lands as may be necessary to its own use, for the purposes contemplated by this act, on complying with the provisions of the six following sections.”
 

 Section 17 provides that the directors may present a petition to the vice-chancellor, setting forth by some proper description “the lands which are wanted for the construction of said railroad, * * * and praying for the appointment of appraisers to assess the damages which the owners of said lands will severally sustain by reason of the appropriation thereof by the said corporation to its own use.”
 

 Section 20 provides that appraisers shall proceed “ to ascertain and assess the damages which each individual owner will sustain by the appropriation of his land for the use or accommodation of such railroad or its appendages."
 

 Section 21 requires that they shall report specifying the damages which the owners of the respective parcels will sustain “ by reason of the appropriation of the same for the purposes aforesaid.”
 

 Section 22 provides that on payment of the damages thus assessed, “the corporation shall immediately become entitled to the use of the said lands for the purposes aforesaid.”
 

 Section 28 provides that “if the legislature of this state shall, at the expiration of ten, and within fifteen years from the completion of said railroad, make provision by law for the re-payment to the said company of the amount expended by them in the construction of said railroad, together with all moneys expended by them for permanent fixtures for the use of said railroad, with interest on such sums at the rate of fourteen per cent per annum, together with all moneys expended by such company for repairs or othewise, for the purposes of said road, after deducting the amount of tolls received by such road, then the said railroad with all fixtures and appurtenances shall vest in and
 
 become the property of the people of this state.”
 

 And the last section provides that the legislature might at any time alter, modify or repeal the act.
 

 By the act, chap. 286 of the Laws of 1850, the Tonawanda
 
 *213
 
 Eailroad Company and the Attica & Buffalo Eailroad Company were authorized to consolidate into a single corporation, and, when consolidated, the two corporations were to be merged into the new corporation. Section 4 of' the act provides that all and singular the rights and franchises of the companies, “ and all and singular the rights and interests of the said two corporations in and to every species of property, real, personal and mixed, and things in action, shall be deemed to be transferred to and vested in such new corporation without any other deed or transfer, and such new corporation shall hold and enjoy the same, together with the right of way and all other rights of property, in the same manner and to the same extent as if the said two corporations above named should have continued to retain the title and transact the business of such corporations, and the title and real estate acquired by either of said two corporations shall not be deemed to revert or be impaired by anything in this act contained.”
 

 By proceedings taken under the act in the same year the consolidation was effected, and the new corporation took the name of the Buffalo & Bochester Eailroad Company.
 

 Under the act, chap. 76 of the Laws of 1853, the Buffalo & Bochester Eailroad Company and other railroad companies were consolidated, and the Hew York Central Eailroad Company thus formed; and § 4 of that act is the same as § 4 of the prior act.
 

 Pursuant to the act, chap. 917 of the Laws of 1869, the Hew York Central Eailroad Company and the Hudson Eiver Eailroad Company were consolidated, and the defendant was thus formed. Section 4 of the act provides that “ all claims, demands, property, rights of way and every other interest, shall be as effectually the property of the new corporations as they were of the former corporations, parties to tlfe said agreement and act; and the title to all real estate taken by deed or otherwise under the laws of this state, vested in either of such corporations, parties to said agreement and act, shall not be deemed to revert or be in any way impaired by reason of this act, or anything done by virtue thereof, but shall be vested in the new corporation by virtue of such act of consolidation.”
 

 Under these acts the land in question has been continuously used and occupied by the successive railroad companies for railroad purposes. It was taken by condemnation proceedings under the act of 1832, and the claim of the plaintiff is that only its use was taken for fifty years, the chartered life of the Tonawanda Eailroad Company, and that at the expiration of that term the use terminated, and the land reverted to him as the successor in title. The ingenious and vigorous argument of his counsel has failed to convince us that this action is maintainable.
 

 It is conceded that the Tonawanda Eailroad Company did not acquire a fee simple in the land taken by it under the act of 1832. Both parties claim that it acquired an easement in the land; but they differ as to the duration of the easement, the contention of the defendant being that it took a perpetual easement for railroad purposes. It took and paid for all the estate it was authorized to take under the act, and we must, therefore, look to the act to see
 
 *214
 
 what estate the legislature intended might be taken. In our efforts to arrive at the legislative intent we must not only scrutinize the language used, but keep in view the purposes to which the land was to be devoted.
 

 The land was to be taken for a permanent public use. It could not have been understood or expected that the' railroad should be operated for the accommodation of the public for fifty years, and that then, after the necessity for it had been greatly increased, it should disappear. While the life of the corporation was limited to fifty years, it could not have been expected that it should really cease to exist at the end of that period. While the legislature reserved the right to cut its life short, it also had the power to extend it. It is the experience of mankind that such
 
 quasi
 
 public corporations never come to an end by mere effluxion of time. A railroad corporation which had during fifty years rendered a public service and properly discharged its corporate functions wtiuld, with the passage of years, become more and more useful and more and more a necessity. Could it have been the legislative intention that at the end. of fifty years the lands taken under the act, with the railroad embankment, ties, culverts, bridges, buildings and other structures, so far as they had become fixtures, should revert to the original owners or their successors in title? Could it have been the intention that at the end of fifty years any new or reorganized company could use and operate the railroad only by a new appraisal of damages, which might include, and would protkbly have to include, the value of the land with a complete railroad thereon ? It is improbable that the parties who sought the charter and the legislature which granted it intended the results claimed by the plaintiff.
 

 There is nothing in the act which limits the use to fifty years or any other term. The corporation could appropriate only such lands as were “ necessary to its own usebut by this language the estate in the lands appropriated was not necessarily limited to the term of fifty years. The corporation could not appropriate any land not needed for its use. But when it appropriated an easement in land, how long was the easement to endure? The damages were to be assessed for the devotion of the land to railroad purposes, and an easement was to be taken for such purposes, and that easement was to be paid for by the corporation and to become its property. Such property it could by authority of law sell, lease or mortgage as it could its other property, and the easement would continue so long as it was needed ' for the purposes of the railroad by whomsoever owned for which it was appropriated. The legislature reserved the right to alter or modify the charter, and thus the life of the corporation could be extended. In such an event was it intended that there should be a now appropriation of the land, and a new appraisal of damages greatly enhanced by the construction of the railroad before the same railroad company with its extended charter could operate its road ? By § 23 of the act the people of the state were authorized, by making certain payments, to take this road, when it with all its fixtures and appurtenances should “ vest in and become the property of
 
 *215
 
 the people of this state.” It certainly was not contemplated that the people should make the payments and then obtain a title limited by years, which would inevitably pass away from them at the end of, the fifty years. Was it within the legislative contemplation that the people would be obliged in order to operate the road in the public "interest to again appropriate the land with a complete railroad thereon and thus again pay for the railroad ?
 

 We are thus brought to the conclusion that the legislature did not intend in the act of 1832 to limit to the term of fifty years the easements acquired in lands thereunder, and that such easements by the successive consolidation acts and agreements became vested in the defendant.
 

 There is nothing in the claim of the plaintiff that the damages of the landowner were appraised upon the assumption that an easement for fifty years only was taken. It is believed that a possible reverter of the land is never contemplated in the assessment of damages in such cases, and that the appropriation is regarded as permanent and the damages are awarded upon that basis. Wood’s Railway Law, 767:
 
 Troy & Boston R. R. Co.
 
 v. Lee, 13 Barb., 169;
 
 Canandaigua & Niagara Falls R. R. Co.
 
 v. Payne, 16 id., 273;
 
 Matter of Union Village & Johnsonville R. R. Co.,
 
 53 id., 457;
 
 Matter of Utica, etc., R. R. Co.,
 
 56 id., 456;
 
 Matter of N. Y. C, etc., R. R. Co.,
 
 6 Hun, 149;
 
 Matter of Prospect Park, etc., R. R. Co.,
 
 13 id., 345.
 

 Ho other basis would be practicable, as the chartered life of the corporation might be curtailed or prolonged and a possible or distant reverter could not well be taken into the account in the estimate of damages. If, therefore, this action could prevail a land owner might receive and enjoy the full value of his land damages for fifty years, and at the end of that time have his land again, enhanced in value by a railroad thereon.
 

 But if we are wrong in the views thus far expressed as to the estate in the land appropriated, only one other view may be taken with any plausibility, and that is that the easement was taken for the use of the corporation during its corporate life. There is very little reason for saying that it was taken for an absolute term of fifty years. Then it was taken for the use of the corporation, and when it ceased to exist the use could not be prolonged. The corporate life came to an end in 1850, at the time of the first consolidation. The new corporation took the place of the two corporations, and they then passed utterly out of existence. Boone on Corporations, 185 ; Wood’s Field on Corporations, 545, 547, 554, 667;
 
 Shields
 
 v.
 
 Ohio,
 
 95 U. S., 319;
 
 Railroad Company
 
 v.
 
 Maine,.
 
 96 U. S., 499 ;
 
 Railroad Company
 
 v.
 
 Georgia,
 
 98 U. S., 359. From 1850 to the commencement of this action, more than thirty years, this land was held and possessed under a claim of right, adversely, by the defendant and its predecessors in the title. During the first twenty years of that time, unless a perpetual easement for railroad purposes was originally taken, the possession was wrongful and the owners of the fee could have re-entered or brought ejectment. That under such circumstances the action is barred by adverse possession is free from doubt.
 

 
 *216
 
 Our conclusion, therefore, is that the judgment should be affirmed, with costs.
 

 All concur.