**FREEPORT SULPHUR CO. v. AETNA LIFE INS. CO.**

Civ. A. No. 2678.

United States District Court
E. D. Louisiana, New Orleans Division.

Sept. 10, 1952.

510

Monroe & Lemann, New Orleans, La., Pearson E. Neaman, Thomas R. Vaughan, New York City, Nicholas Callan, Monte M. Lemann, New Orleans, La., for plaintiff.

Bigham, Englar, Jones & Houston, New York City, Milling, Godchaux, Saal & Saunders, New Orleans, La., George S. Brengle, New York City, W. Braxton Dew, Hartford, Conn., Eugene D. Saunders, New Orleans, La., for defendant.

WRIGHT, District Judge.

This case presents for judicial determination an interpretation of an employees' group annuity policy issued by the defendant to the plaintiff in behalf of its employees. The primary question to be determined is whether or not the contract, having no express term, is cancellable at will.

The plaintiff is engaged in the mining of sulphur. Its principal operations are in Louisiana and in Texas where the majority of its employees reside, but its executive offices are in the City of New York. It is chartered for perpetual existence by the State of Delaware. The defendant is an insurance company chartered under the laws of the State of Connecticut with its principal offices in Hartford.

The contract or policy in suit was entered into in 1934 after a series of conferences between the parties in the City of New York and after an exchange of correspondence between New York and Hartford. Before being issued, by agreement of the parties, the contract was presented to the Insurance Department of the State of New York for approval. After approval was obtained, it was mailed from Hartford to the plaintiff in New York.

Under the contract the insurer agrees to pay an annuity, after a certain age, to each employee of the plaintiff who applies for coverage. The consideration for the contract as recited therein is payment by the employer of annual premiums in advance, the employer subsequently to be partially reimbursed by payroll deductions from the employees participating.

No term is expressed in the contract. It is provided, however, that the premium rate as shown in the policy will remain unchanged for employees participating during the first five years, while as to employees applying for coverage after the first five years, increases amounting to not more than $2\frac{1}{2}\%$ of the original rate for each five year period may be demanded, an increase in no event to result in a rate higher than the rates then being used by the company in new group annuity contracts providing similar benefits.[1]

The contract was in full force from April 1, 1934 until November 23, 1949, at which time Aetna advised Freeport that after

1. "The Company also reserves the right, upon three months' written notice to the employer, to modify the premium rates in Tables A and B to be used in the calculation of premiums with respect to employees whose coverage hereunder commences five years or more after the date of this contract; provided that at no time between April 1, 1939 and March 31, 1944 shall premium rates be established which are more than $7\frac{1}{2}\%$ greater than the original rates, at no time between April 1, 1944 and March 31, 1949 shall premium rates be established which are more than 10% greater than the original rates, at no time between April 1, 1949 and March 31, 1954 shall premium rates be established which are more than $12\frac{1}{2}\%$ greater than the original rates, et cetera, the maximum permissible difference between the new rates and the original rates increasing by $2\frac{1}{2}\%$ of the original rates for each five year period entered upon thereafter; and provided further that no table of premium rates shall be established which results in a greater total premium than the table of premium rates then being used by the Company in the new Group Annuity contracts which it is then issuing providing similar benefits for employees in the same premium rate classification."

January 1, 1950 employees not then participating would not be covered under the group contract. In other words, Aetna gave notice of cancellation of the contract as to new employees without affecting the rights of employees already covered. This notice of cancellation followed a series of unsuccessful attempts on the part of Aetna to adjust the rate base provided in the contract upward as to new employees, the contract, because of softening interest rates and the increase in life expectancy, having become as to Aetna extremely onerous.

Plaintiff contends that the policy in suit is a perpetual obligation on the part of Aetna to provide the coverage stated in the policy. Aetna contends that the contract, being without term, is terminable by either party insofar as it is still wholly executory; that the contract, insofar as it is still wholly executory, lacks mutuality and hence is not binding upon either of the contracting parties; and that the contract, as construed as Freeport contends it should be, has now become discriminatory, and insofar as it is still wholly executory, its performance is prohibited by law.

■ At the outset it should be determined by what law the contract shall be governed. The resolution of this question is simple for the reason that the parties themselves by submitting the contract for approval to the Insurance Division of the State of New York have evinced the intention of having the law of that state apply to it. The intention of the parties will prevail. Boseman v. Connecticut General Life Insurance Co., 301 U.S. 196, 202, 57 S.Ct. 686, 81 L.Ed. 1036. There is nothing in the law or the jurisprudence of Louisiana which suggests a different conclusion. Griffin v. McCoach, 313 U.S. 498, 61 S. Ct. 1023, 85 L.Ed. 1481; Klaxon v. Stentor Electric Mfg. Co., 313 U.S. 487, 61 S.Ct. 1020, 85 L.Ed. 1477.

■ Insurance contracts are governed generally by the same rules of interpretation as are ordinary contracts, the cardinal rule being that effect should be given to the intention of the parties if it can be done consistently with legal principles. If the intent of the parties is unambiguously expressed in the instrument itself, effect must be given to the expressed intent. The court has no authority to revise a contract or to make a contract for the parties. Where the intent is not adequately expressed and cannot be discovered by a study of the entire instrument, resort may be had to the preliminary negotiations leading to the contract. Preliminary negotiations, however, cannot be allowed to contradict or to vary the terms of the written instrument, but may be used only to determine the intent of the parties. The manner in which the contract has been construed by the parties themselves may also be useful in determining intent, for the parties, by their acts pursuant to the contract, show what is meant by the contract. The rule that in case of doubt as to the meaning thereof a contract is to be interpreted against the party who drew it is applicable to insurance or annuity contracts.

■ In addition to these general rules of contract interpretation there is a further rule of particular importance to the contract in suit. An interpretation calling for perpetual performance of a contract should be avoided unless a contrary intention of the parties is manifest. Williston on Contracts, Revised Edition, Vol. 1, § 38; McCaffrey v. B. B. & R. Knight, Inc., D.C., 282 F. 334; Town of Readsboro v. Hoosac Tunnel & W. R. Co., 2 Cir., 6 F. 2d 733; Holt v. St. Louis Union Trust Co., 4 Cir., 52 F.2d 1068. Perpetual contracts are not favored in the law, for perpetuity is a concept which eludes the grasp of the human mind.

Plaintiff, in its effort to support its position that the contract is a perpetual one in spite of the fact that no express term is provided, relies on the language of the contract itself and on the intention of the parties as expressed in the contract, in the negotiations leading up to the contract, and in the manner in which the contract has been construed.

Plaintiff's principal reliance is upon that portion of the contract which provides authority to increase the premium rate every five years as to new employees after the first five years. Plaintiff reasons from this provision that the parties intended the contract to cover new employees for all time

to come. What plaintiff fails to realize is that this so-called escalator provision of the policy applies to employees now covered and who will continue to be covered. It, like the other provisions on which Freeport relies, would have been included in the contract even if Aetna had express authority to cancel. These provisions, therefore, cannot necessarily mean that the parties intended that the benefits of the contract would be available to new employees of Freeport ad infinitum.

Plaintiff seeks to prove an intention on the part of the parties to enter into a perpetual contract from the exchange of letters between the parties prior to its execution, together with statements made by officers of Aetna during this confection period. The court has studied those letters and the affidavits outlining the various statements. From this study it is convinced that the parties intended to enter into a contract which would be of long duration, but nowhere in any of the letters or in any of the statements is there any indication whatever that the parties had in mind a perpetual contract. In fact, as far as appears from the record, the officials of Aetna were without knowledge that Freeport's charter was a perpetual one.

Plaintiff also relies on the manner in which the parties have construed the contract as tending to prove it is of perpetual duration. It is true that the actions of the officials of Aetna indicate clearly a conviction on their part that Aetna was bound by the contract, but again nowhere is there any indication whatever in any of their actions that Aetna's obligation under it would last forever.

■ The details of the contract in suit were worked out in conferences and by correspondence between the representatives of the two parties. Consequently, the rule of strict construction against the insurer need not necessarily be applied. Even if that rule be applied, however, there would still be nothing in this contract or in the circumstances surrounding this contract from which can be implied an intention on the part of the parties that it be eternal. There is nothing ambiguous about the contract. It just does not have an express term and nothing can be gleaned from the contract itself or from the intention of the parties which supplies this deficiency.

Plaintiff in support of its position relies on a series of cases involving interpretation of contracts which are silent as to duration.[2] In most of these cases, however, the contracts in question were either fully performed on one side or the party seeking specific performance had suffered a severe detriment such as the outlay of large sums of money pursuant to the contract. In such cases some courts have held the contracts to be of perpetual duration. No such case is presented here. Freeport has agreed only to pay annual premiums in advance and it has paid those premiums. If the contract in suit is no longer in force as to new employees, then no premium covering new employees will be included by Freeport in its annual payments. As to new employees Freeport will be required to make other arrangements, if it desires to offer them annuity coverage.

■ It would appear clear, therefore, that this contract is not one of perpetual duration. Aetna then suggests that since the contract cannot be construed to be perpetual and since it has no definite term, it is cancellable at will by either party. Aetna cites many cases from New York and elsewhere to support its position.[3] All of these cases, however, are clearly distinguishable from the case at bar. These cases involve employment contracts, agency contracts, commodity and service contracts.

2. Franklin Tel. Co. v. Harrison, 145 U.S. 459, 12 S.Ct. 900, 36 L.Ed. 776; McKell v. Chesapeake & Ohio R. Co., 6 Cir., 175 F. 321, affirmed on rehearing, 6 Cir., 186 F. 39; Western Union Tel. Co. v. Pennsylvania Co., 3 Cir., 129 F. 849; Manners v. Morosco, 2 Cir., 258 F. 557; Llanelly Rwy. & Dock Co. v. London & Northwestern Rwy. Co., L.R. 8 Ch. 942.

3. Cronk v. Vogt's Ice Cream, Inc., Sup., 15 N.Y.S.2d 649; Echols v. New Orleans J. & G. N. R. Co., 52 Miss. 610; McGuire v. Nelson Bros., 177 La. 302, 148 So. 56; Sawman Oil Co., Inc. v. Bush, Tex. Civ.App., 136 S.W.2d 938; Duff v. P. T. Allen Lbr. Co., 310 Ky. 439, 220 S.W.2d 981.

None of them involves an employees' group annuity contract nor any contract similar thereto.

 This employees' group annuity policy is a unilateral contract, an exchange of a promise for an act, a situation in which the insurer, in consideration of the annual payment of the premium by the employer, gives the employer, among other things, a continuing option to purchase annuities for its new employees at the price fixed in the contract. Such an option is not terminable at will by the insurer. Since no term for the option is provided in the contract, it is terminable after a reasonable time. Restatement, Law of Contracts, §§ 24, 47; Williston on Contracts, Revised Edition, Vol. 1 §§ 38, 61; Holt v. St. Louis Union Trust Co., supra; Bach v. Friden Calculating Mach. Co., 6 Cir., 155 F.2d 361; Cohen & Sons, Inc. v. M. Lurie Woolen Co., Inc., 232 N.Y. 112, 133 N.E. 370; Pope v. Terre Haute Car & Mfg. Co., 107 N.Y. 61, 13 N.E. 592. What is a reasonable time must be determined from all the circumstances of the case, and this court, after a study of all the circumstances as reflected in the record, concludes that a reasonable time would be twenty-five years from the date of the contract. Holt v. St. Louis Union Trust Co., supra; Bach v. Friden Calculating Mach. Co., supra; Cohen & Sons, Inc. v. M. Lurie Woolen Co., Inc., supra.

Before the enforcement of this contract can be required even for a reasonable time, however, Aetna's two remaining contentions must be disposed of. The first of these is that the contract lacks mutuality. Aetna asserts that the contract as written would bind Aetna to carry out its provisions whereas Freeport is at liberty to discontinue and cancel the contract at any time. The contract itself is silent on Freeport's right in this regard. It is clear, however, from the nature of the contract and from printed material relating to the contract prepared by Aetna and distributed by Freeport to its employees that there was no intention on the part of the parties to bind Freeport. This fact alone, however, does not relieve Aetna of its obligations under the contract. As shown above, this contract is composed of a promise in the form of the policy to pay annuities to employees of Freeport pursuant to the provisions of the policy, provided Freeport accepts the policy and pays the premiums annually in advance. Freeport did accept the policy and did pay the annual premiums in advance. Consequently, the promise of Aetna, acted upon by Freeport, constitutes a valid contract, at least to the extent that the contract has been executed. Willard, Sutherland & Company v. United States, 262 U.S. 489, 43 S.Ct. 592, 67 L.Ed. 1086; Howard v. Mercury Record Corp., 5 Cir., 178 F.2d 449; 17 C.J.S., Contracts, § 100c. Aetna impliedly admits this result by challenging as without mutuality only the executory part of the contract while respecting its obligations under the executed portion.

 One effect of Freeport's performance under the contract is to give Freeport an option to purchase for its new employees annuities pursuant to the contract. The consideration supporting the contract also supports the option which is one of the terms of the contract. Cohen & Sons v. M. Lurie Woolen Co., supra; Warner-Quinlan Co. v. Smith, 134 Misc. 649, 236 N.Y.S. 241, affirmed 255 N.Y. 582, 175 N.E. 322. Such is the sense of the contract and such was the intent of the parties. It is not void for lack of mutuality.

Aetna's last contention is that the contract insofar as it is still wholly executory has become discriminatory and therefore illegal. Aetna cites in support of its position Section 209 of the New York Insurance Law, Consol.Laws, c. 28, which provides in effect that an insurance company doing business in the state cannot make or permit "any unfair discrimination between individuals of the same class" in the purchase of life insurance or annuity contracts. Section 1214 of the Louisiana Insurance Law, LSA–R.S. 22:1214, is to the same effect. It is unchallenged that Aetna is now selling group annuities at higher premium rates than are included in the contract in suit. There is no showing, however, that this fact amounts to "unfair discrimination between individuals".

The contract in suit is a group annuity contract. Competition among insurers for group contracts is keen, and the insurer with the most attractive policy obtains the business. The premium rates charged by the same insurer vary from contract to contract. No attempt has been made by the states of New York or Louisiana to apply the discrimination statute to group annuity contracts. Certainly no standard premium rate has been set up in either state and the defendant itself apparently thought that the discrimination statutes were not applicable to this contract because immediately prior to the notice of cancellation it offered Freeport a new contract with a premium rate substantially less than the going rate. Under the circumstances this court is reluctant to strike down the contract on the highly questionable theory that further performance thereunder may be in violation of these discrimination statutes.

There being no valid reason in law or equity why specific performance of the contract should not be enforced, on presentation of proper form of judgment it will be ordered.