**TEXAS GULF SULPHUR COMPANY**

v.

**AETNA LIFE INSURANCE COMPANY.**

Civ. A. No. 7272.

United States District Court
S. D. Texas, Houston Division.

June 8, 1955.

Judgment Modified Aug. 3, 1956.
See 235 F.2d 791.

Baker, Botts, Andrews & Shepherd, Thomas M. Phillips, James L. Read and F. G. Coates, Houston, Tex., for plaintiff.

W. Braxton Dew, Hartford, Conn., Fulbright, Crooker, Freeman, Bates & Jaworski, W. N. Arnold, Jr., Houston, Tex., for defendant.

KENNERLY, District Judge.

On August 1, 1934, Texas Gulf Sulphur Company, engaged in mining sulphur, (hereinafter called "Texas Gulf") and the Aetna Life Insurance Company (hereinafter called "Aetna") entered into a "Group Annuity Contract" covering numerous employees of the Texas Gulf, which was then, has since been, and is now engaged on a large scale in the mining and production of sulphur in Texas. Such contract appears to be plain and unambiguous, *except as to the time of its termination.*

Differences arose between the parties as to the time of termination, and this suit was instituted January 29, 1953, by Texas Gulf against Aetna seeking declaratory judgment construing such con-

tract and certain notices as to its termination given thereunder and finding and fixing such time of termination, etc.

Texas Gulf is a corporation organized under the laws of Texas, and Aetna is a corporation organized under the laws of Connecticut. They are citizens of different states, and there is jurisdiction here under Section 1332, Title 28 U.S.C.A.

Each, Texas Gulf and Aetna, have moved for summary judgment under Rule 56 of the Federal Rules of Civil Procedure, 28 U.S.C.A., and have filed affidavits, depositions, exhibits, etc., which with the other papers constitute the record in the case. This is a hearing of both such motions for summary judgment on oral argument and briefs, disposition of such motions will dispose of the case.

1. At the time (August 1, 1934) this contract was entered into between Texas Gulf and Aetna, there was in existence between Aetna and Freeport Sulphur Company, engaged in the productions of sulphur in Texas and Louisiana, a similar contract dated *April 1, 1934* (referred to as Freeport contract) *in which, as here, the time of termination was not fixed.* Differences arose between the parties to the Freeport contract resulting in litigation, a history of which may be found in Freeport Sulphur Co. v. Aetna Life Insurance Co., 107 F.Supp. 508, at page 510, and the majority and dissenting opinions 5 Cir., 206 F.2d 5, at page 8, 41 A.L.R.2d 762. The contract here is substantially the same as the Freeport contract, the facts in this case and in that case are quite similar, and most of the questions raised here are settled by the opinions in that case. A lengthy discussion here of the authorities cited by the parties seems unnecessary.

2. Following the ruling in the Freeport case, it must be held that the contract here is a continuing option given Texas Gulf which is not terminable at the will of either party, not void for lack of mutuality, not discriminatory under the laws of either Connecticut or Texas, and not a perpetual one. It should be and it is said here, as was said of the Freeport contract by the trial judge in the Freeport case and approved by the Court of Appeals [206 F.2d 7]: "Since no term for the option is provided in the contract, it is terminable after a reasonable time."

Judge Russell, in his dissenting opinion in the Freeport case, puts it this way:

"Generally, where the parties to a contract fail to specify a definite term for its continuance, with the result that the judicial process must be resorted to in order to determine a 'reasonable time' which should elapse before it is terminated, the primary effort of the courts is to determine the time which, as reasonable men, the parties to the contract ought to have understood each other to have in mind at the time the contract was executed, but which time was, nevertheless, for some reason, omitted from the contract."

This Court is, therefore, called upon as the Courts were called upon in the Freeport case to determine what is a reasonable time for the contract here to run from and after its date, August 1, 1934. In order to so determine, the Court will look to the situation of the parties and their negotiations prior to the date of the contract, the contract itself, and the action of the parties under such contract since its date.

3. The situation of each and the negotiations between Texas Gulf and Aetna prior to the date of the contract is fully shown by the record, but no good purpose would be served by discussing it in detail here. However an examination thereof shows that Texas Gulf had long desired and needed to have a long-range retirement, pension or annuity plan for its then and future employees, and that Aetna knew of such desire and need and was willing to meet it. In the negotiations between them, through their officers and agents, carried on in personal interviews and by correspondence extending over a period of many months,

substantially every phase of the contract was discussed and the views and desires of each made clear to the other. This discussion included the matter of the premium rates and necessary changes therein during the period of a long-range contract. It also included the matter of the termination of the contract. It would be unreasonable to say that either party overlooked or ignored so vital a question as the time of termination in a contract so important.

4. What light does the contract itself throw upon the question?

The suggestion that the contract should be construed against Aetna because prepared by Aetna does not, under the facts, appeal to me. But it is unusual that Aetna should execute and put in force within a few months two contracts (the Freeport contract and this one) with no definite date of termination fixed in either. This, however, throws little or no light on the question we have here.

On the question of a reasonable time under the Freeport contract, the trial judge said, 107 F.Supp. 513:

"What is a reasonable time must be determined from all the circumstances of the case, and this court, after a study of all the circumstances as reflected in the record, concludes that a reasonable time would be twenty-five years from the date of the contract. Holt v. St. Louis Union Trust Co., supra [4 Cir., 52 F.2d 1068]; Bach v. Friden Calculating Mach. Co., supra [6 Cir., 155 F.2d 361]; Cohen & Sons, Inc., v. M. Lurie Woolen Co., Inc. supra [232 N.Y. 112, 133 N.E. 370]."

The trial judge thus found twenty-five years from the date of that contract to be a reasonable time thereunder, but in the majority opinion of the Court of Appeals this time is reduced to twenty years from the date of the contract.

It is said in the majority opinion (italics mine):

"We differ with the district judge only as to what is a 'reasonable time'

for the operation of the contract. We think 25 years is too long. Since April 1, 1934, economic conditions have radically changed, interest rates have sharply declined, and life expectancy has substantially lengthened. All these things enter into the rates to be charged for such a policy as this.

"In reserving the right to modify the premium rates on this policy, however, Aetna *specifically* provided for increases in rates through March 31, 1954, indicating that Aetna itself contemplated that the contract would remain in effect at least until that date.

"In the absence of a specific provision as to duration, which Freeport could have insisted upon, and in view of substantially changed conditions already referred to, we regard 20 years as a reasonable period of duration, after which Aetna is entitled to *discontinue new coverages*. Compare Texas & P. Ry. Co. v. City of Marshall, 136 U.S. 393, 10 S.Ct. 846, 34 L.Ed. 385."

The *modifying clause in the Freeport* contract referred to by both Courts is as follows (italics mine):

" * * * provided that at no time between *April 1, 1939 and March 31, 1944* shall premium rates be established which are more than 7½% greater than the original rates, at no time between *April 1, 1944 and March 31, 1949* shall premium rates be established which are more than 10% greater than the original rates, at no time between *April 1, 1949 and March 31, 1954* shall premium rates be established which are more than 12½% greater than the original rates, et cetera, the maximum permissible difference between the new rates and the original rates increasing by 2½% of the original rates for each *five year* period entered upon thereafter."

A similar clause in the contract here is as follows (italics mine):

"The Company reserves the right, upon three months' written notice to the employer, to modify any one or more of the following at any time after this contract has been in force ten years:

\* \* \* \* \*

"(c) The premium rates in Tables A, B and/or C provided, however, that at no time between *August 1 1944,* and *August 1, 1954,* shall premium rates be established which are more than 5% greater than the original rates, at no time between *August 1, 1954* and *August 1, 1964* shall premium rates be established which are more than 10% greater than the original rates, at no time between *August 1, 1964* and *August 1, 1974* shall premium rates be established which are more than 15% greater than the original rates, et cetera, *the maximum permissible difference between the new rates and the original rates increasing by 5% for each ten year period entered upon thereafter.*"

Using the same process of reasoning here as there, it seems clear that Aetna itself contemplated that the contract here would remain in effect at least until August 1, 1974, or a period of forty years from its date.

Texas Gulf presses upon me that under the language so quoted from the majority opinion the finding here should be that Aetna contemplated that this contract should remain in effect until 1984, or a period of fifty years. I do not think this view is meritorious.

On the other hand Aetna says that Judge Strum's language quoted is with respect to the coverage of old employees and not the coverage of new employees. This is, I think, clearly incorrect.

Aetna also says:

"It is regrettable that Judge Strum included the paragraph under discussion in an opinion that otherwise shows a firm grasp of the facts as to the workings of Group Annuity Contracts, because it can be clearly demonstrated that the statement was inadvertent, superficial, and erroneous, etc."

Both Judge Strum who wrote the majority opinion and the Judge (Hutcheson) who concurred therein, are well known for the accuracy and clarity of their opinions, and I do not agree with this view of Aetna.

Aside from the views of the Judges as set forth in the opinions in the Freeport case, a comparison of the clause of this contract quoted above with respect to premium rates with the similar clause in the Freeport contract makes it clear, I think, that both contracts are long-range contracts, and this contract is a longer range contract than the Freeport contract, and was so intended by the parties.

Again, considering this contract in its entirety and from its "four corners" leads to the conclusion, I think, that the parties intended making a contract of long duration.

5. Looking now to the actions of the parties under and in carrying out this contract.

From 1934 to 1950, about fifteen years, operations under this contract went forward without complaint from Aetna, even though Aetna knew it was unprofitable for it. It was not until 1950 that Aetna gave Texas Gulf notice of its claim of the right of termination. The facts shown by the record of such fifteen years' operations under such contract do not, I think, help Aetna in its present claim that the parties had in mind a short-range contract.

6. But, Aetna says that the Texas charter of Texas Gulf expired December 23, 1959, and that the parties intended December 23, 1959, to be the date of termination of this contract, etc.

The facts are that during the negotiations for, and at the time of execution of this contract, Texas Gulf's charter was, under the *then* provisions of the laws of Texas to expire December 23,

**88**

1959. However, the Legislature of Texas, by the Act of 1937 (now Article 1315 (a), Vernon's Ann.Civ.St. of Texas) made provisions for the extension of the life of such corporation, and on December 15, 1951, Texas Gulf's corporate life was extended to December 23, 2009.

My conclusion is that in view of such facts the contentions of Aetna are not meritorious.

7. My findings and conclusions are that since no time for the termination of this contract is fixed, it is terminable after a reasonable time, and a reasonable time would be forty years from and after August 1, 1934, i. e. that Aetna may discontinue the contract as to new coverage on August 1, 1974. Also that any notice or notices given Texas Gulf by Aetna to the contrary are to no effect.

It follows from what has been said that Texas Gulf's motion for summary judgment should be granted, and Aetna's motion for summary judgment should be denied. That declaratory judgment should enter in accordance with this opinion.

Let appropriate decree be drawn and presented.