BLUE CROSS OF NORTHEAST OHIO, APPELLEE, *v.* AKRON GENERAL HOSPITAL ET AL., APPELLANTS.
BLUE CROSS OF NORTHEAST OHIO, APPELLANT, *v.* AKRON GENERAL HOSPITAL ET AL., APPELLEES.

[Cite as Blue Cross v. Akron General Hospital, 12 Ohio App. 2d 23.]

24

(Nos. 5854 and 5855—Decided March 8, 1967.)

Messrs. *McAfee, Hanning, Newcomer, Hazlett & Wheeler* and Messrs. *Slabaugh, Walker, Pflueger, Roderick & Myers,* for Blue Cross of Northeast Ohio.

Mr. *Bernard J. Roetzel,* for Akron City Hospital and The Barberton Citizens Hospital.

Mr. *Joseph M. Holden,* for The Children's Hospital of Akron.

Mr. *Cletus G. Roetzel,* for St. Thomas Hospital of Akron.

Mr. *William T. Walker,* for Akron General Hospital.

HUNSICKER, J. Two appeals were lodged in this court, in which the same parties were involved. Appeal numbered 5855 was filed on questions of law and fact by Blue Cross of Northeast Ohio; appeal numbered 5854 was filed on questions of law only, by Akron General Hospital, Akron City Hospital, The Children's Hospital of Akron, Saint Thomas Hospital of Akron, Ohio, and The Barberton Citizens Hospital. Thereafter, an order of consolidation was issued by this court, and the cases were directed to proceed under the number and title of case No. 5854. The matter is considered as an appeal on questions of law.

The several hospitals named above are appellants, and herein shall be called Hospitals. The plaintiff-appellee shall be designated as Blue Cross.

The Hospitals and Blue Cross entered into a contract, effective January 1, 1963, wherein the Hospitals agreed to provide hospital service to the subscribers of Blue Cross hospital service contracts. This contract is not the first such agreement entered into by the parties. There was a Cleveland asso-

ciation of hospitals, and an Akron association. There developed from these two, the Blue Cross of Northeast Ohio. From this new group, there developed a broader hospital service with new and different contracts, the last of which is the one we find at issue in the case before us. Blue Cross did not undertake to furnish any hospital service, but merely to pay for hospital service provided to its subscribers by one of the hospitals herein, and other hospitals; all of whom are known as participating hospitals.

This agreement, called "Inter-Hospital Agency Agreement," was accepted by these appellant hospitals, and many other such institutions; and was designed to develop a program of rendering hospital service, at fixed rates, to those who become subscribers of Blue Cross service contracts. Provision is made in the "Inter-Hospital Agency Agreement" for withdrawal by an individual hospital, or for termination of the entire agreement, when two-thirds, or more, of the hospital members desire it.

The subscriber, either an individual, or a group, could obtain various types of service, and various durations of service, at different prices. The basic service contract provided for one-hundred-twenty days of hospital care. The basic pay schedule was thirty days; and if a subscriber did not pay at least that far in advance, he lost his rights, under the subscriber contract with Blue Cross. Many persons paid quarterly, semi-annually, and yearly.

This "Inter-Hospital Agency Agreement" said, in Article II, paragraph 1:

"The Participating Hospitals and each of them appoint Blue Cross to be their exclusive agent to carry out and administer the program for furnishing Hospital Service contemplated by this Agreement; to procure Subscribers, to collect fees to be paid for Service Contracts, to distribute among hospitals the funds so collected in the manner and at the times herein provided, and to do any and all acts and things necessary to, in connection with or incidental to the carrying out of this Agreement, *which appointment shall be irrevocable during the participation of such Hospital in this Agreement.*" (Emphasis ours.)

This is the only indication of the probable time when the

agreement between Blue Cross and Hospitals was to be in effect, for no definite time limit is fixed for the duration of the agreement.

Article VI, paragraphs 1 and 2, says:

"1. (90-Day Notice) Any Participating Hospital may withdraw from this Agreement on the last day of any calendar month by delivering to Blue Cross and to the other Participating Hospitals written notice of its intent so to do not later than ninety (90) days before the date upon which such withdrawal is to become effective.

"2. (Hospital obligation to furnish service) Such withdrawal shall not relieve the Participating Hospital so withdrawing from its obligation to furnish Hospital Service to any Subscriber holding unexpired Service Contracts, to the extent of the benefits therein provided, at the date upon which such withdrawal becomes effective. Such Participating Hospital shall be entitled to receive from Blue Cross the Payments for which provision is made in Article IV hereof, for Hospital Services rendered to any Subscriber by such withdrawing hospital as required by this Section. Except to the extent provided in this Section, such Participating Hospital shall not be entitled to any share of and shall not have or claim to have any interest in, any funds which may be held in the possession of Blue Cross, at any time, either before or after the date upon which its withdrawal becomes effective."

Pursuant to the provisions of Article VI, the Hospitals herein served notice of withdrawal from the "Inter-Hospital Agency Agreement," and indicated that they would not be bound to render hospital service to Blue Cross subscribers after the ninety days had expired, except as to those subscribers who paid for their service contract prior to withdrawal, or who were hospital patients at the time of withdrawal.

Blue Cross then filed an action in the Court of Common Pleas of Summit County for a declaration of rights under the "Inter-Hospital Agency Agreement." Blue Cross does not deny the right of Hospitals to withdraw; but they do insist that each subscriber has a continuing contract which calls for hospital service so long as such subscriber prepays for the service.

This contract, Blue Cross says, cannot be terminated by the act of Hospitals withdrawing from participation.

The trial court adopted the view that since no time limit on participation by the Hospitals is fixed by the "Inter-Hospital Agency Agreement," it is a continuing contract that should run for a reasonable length of time. After oral hearing, and the receipt of stipulations and exhibits, the trial court fixed two years as the reasonable period during which the unexpired subscriber contracts with Blue Cross must be honored by Hospitals.

From the judgment thus entered, both sides appealed. The overriding question before us is: Did the trial court err, as a matter of law, when it found that the "Inter-Hospital Agency Agreement" contained a continuing agreement to furnish, for a reasonable time, hospital service to Blue Cross subscribers holding unexpired service contracts at the date when Hospitals withdrew from participation in the "Inter-Hospital Agency Agreement"?

In order to resolve that question, we are required to interpret the "Inter-Hospital Agency Agreement" contract in the light of the words it used to describe the rights and liabilities of the parties.

We do not conclude that Chapter 1739 of the Revised Code diminishes, in any way, the right of a hospital participating in an agreement to withdraw from an agreement, when, by its terms, such hospital may do so; nor do we believe that chapter of the Revised Code places a burden on the participating hospital greater than is provided for in the subscribers' agreement.

We do not have, in the agreement before us, a situation that existed in the case of *Freeport Sulphur Co.* v. *Aetna Life Ins. Co.* (C. C. A. 5), 206 F. 2d 5. The contract of Freeport Sulphur would discontinue at any time Freeport ceased paying the required premiums. There was no other indication as to the duration of that annuity agreement. In the "Inter-Hospital Agency Agreement" that we have here, there is a provision for withdrawal, and for termination, subject to the provision that the agency of Blue Cross ends upon withdrawal (Article II, paragraph 1).

Except for the lack of a specific date fixing the duration of

the agency agreement, we believe that the words used in the "Inter-Hospital Agency Agreement" are susceptible of but one interpretation, which is: that any agency of Blue Cross ceased upon withdrawal by Hospitals, subject to the right of the then subscribers to have their contracts recognized for the balance of the term paid for at that time. This, also, would apply to patients in hospitals whose subscriber agreement was not fulfilled.

We do not have, in this case, the annuity situations found in corporations where there is a vested interest of those whose pension contract is completed. See *Cantor* v. *Berkshire Life Ins. Co.,* 171 Ohio St. 405.

Concluding, as we do, that this "Inter-Hospital Agency Agreement" is not a continuing agreement, we find that the trial court erred, as a matter of law, in reaching the conclusion it did. The judgment is reversed, and final judgment is granted Hospitals, subject to the provisions found in Article VI, paragraph 2, of the agreement.

*Judgment reversed.*

DOYLE, P. J., and BRENNEMAN, J., concur.